2002-NMSC-008

43 P.3d 1042

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Frank MARTINEZ, Defendant–Appellant.**

No. 23,463.

Supreme Court of New Mexico.

March 12, 2002.

Phyllis H. Subin, Chief Public Defender, Jeffrey J. Buckels, Assistant Public Defender, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Steven S Suttle, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

FRANCHINI, Justice.

{1} Frank Martínez pleaded guilty to the murder of Crystal LaPierre and, following a capital sentencing hearing, was sentenced to death. The transcript of his plea hearing was subsequently lost and a reconstruction hearing was conducted to replace that transcript. Defendant asserts: (1) it was error for a judge other than the assigned judge to accept his original plea; (2) the missing transcript deprived Defendant of his right to appellate review; (3) the reconstruction hearing was improperly conducted; (4) the trial court failed to fully inform Defendant of his right to be sentenced by a jury; and (5) the sentencing hearing was improperly conducted. We hold: (1) the acceptance of the plea by a judge other than the assigned judge was not error; (2) the missing transcript does not deprive Defendant of the right to appeal or otherwise constitute fundamental error; (3) the reconstruction hearing was conducted improperly; and (4) the trial court erred in

failing to adequately advise Defendant of his right to be sentenced by a jury. We order a new reconstruction hearing at which Defendant must be present. The judge who presided over the original plea proceeding may testify as a witness at the new reconstruction hearing but may not preside. We vacate Defendant's sentence and order that, assuming Defendant's judgment of conviction stands after the reconstruction hearing, he be advised of the jury unanimity requirement before determining whether or not to waive his right to jury sentencing. Because we reverse Defendant's sentence on the basis of the trial court's failure to adequately advise him of his right to be sentenced by a jury, we do not address any additional alleged errors.

## I.

{2} At a plea hearing held January 19, 1995, Defendant pleaded guilty to the August 26, 1993 murder of twelve year old Crystal LaPierre. In his Plea and Disposition Agreement, Defendant pleaded guilty to first degree murder, first degree criminal sexual penetration, conspiracy to commit murder, tampering with evidence, and kidnaping. No charges were dropped, nor did Defendant receive any other consideration, in exchange for his plea. On March 14, 1995, Judge Martin Pearl conducted a sentencing hearing at which he heard testimony from a co-defendant, John Paul Aguilar. Based on Mr. Aguilar's account of Defendant's violent participation in this crime, Judge Pearl determined that three aggravating circumstances were present and sentenced Defendant to be executed. The grim details of this murder, however crucial to the determination of Defendant's sentence, do not inform the narrow issue that we now address on appeal: the propriety of the procedures afforded Defendant.[1]

{3} The circumstances surrounding Defendant's plea have, unfortunately, been punctuated by procedural and clerical irregularities. First, although Judge Pearl was assigned the case in district court, Judge John Pope, of the same district, took Defendant's plea and waiver of a jury for sentencing. Second, the only record of Defendant's plea hearing was lost. After Defendant filed a motion for summary reversal on October 30, 1997, we issued an order demanding production of the lost tapes, or, in the alternative, requiring a hearing to determine whether the plea hearing could be reconstructed. The lost tapes could not be found and a reconstruction hearing was scheduled. Over defense counsel's objection, the trial court conducted the reconstruction hearing in Defendant's absence.

{4} At the reconstruction hearing, the State called the two prosecutors who were present at the original plea hearing. They recalled the factual basis for Defendant's plea and portions of Judge Pope's colloquy with Defendant. Judge Pope produced a sheet of questions that he always asks when determining whether a plea has been entered voluntarily, knowingly, and intelligently. At the end of the hearing, Judge Pope drafted a series of findings of fact and conclusions of law in which he affirmed the constitutional propriety of the original plea hearing over which he had presided. On appeal, Defendant asserts that this Court should, alternatively, allow Defendant to withdraw his plea of guilt, vacate Defendant's sentence and remand for resentencing, or impose a life sentence. For reasons outlined below, we do not allow Defendant to withdraw his plea. However, in response to errors arising from the reconstruction hearing and Defendant's waiver of jury sentencing, we order a new reconstruction hearing and vacate Defendant's sentence.

## II. THE TAKING OF THE PLEA

{5} Judge Pearl was the assigned district judge in this matter. Apparently, one of the parties requested a setting for a change of plea while Judge Pearl was on vacation and Judge Pope took Defendant's plea in Judge Pearl's stead. Misconstruing our rules of criminal procedure, Defendant

1. Neither is the dissent's account of the facts of this murder material to any of the issues addressed therein. Since this Court does not address any evidentiary claims, the gruesome details of this crime are irrelevant to our analysis of the legal process afforded Defendant. Moreover, due to the loss of the transcript of the plea, we have no record of the facts underlying the plea. We are unwilling to proclaim the co-defendant's allegations the "facts" of this case.

argues that Rule 5–304(C), (D) NMRA 2002 precludes anyone but the assigned judge from taking the plea. Accordingly, Defendant claims that it was error for Judge Pope, rather than Judge Pearl, to preside at the plea hearing. Sections (C) and (D) do afford the trial court discretion to accept or reject a plea. Nothing in these rules, however, prevents another judge, vested with the same jurisdiction and with equal standing as the assigned judge, to accept a plea in the stead of the assigned judge when the assigned judge is unavailable. Neither does Defendant provide any other support for this contention. We therefore hold that Defendant's claim lacks merit.

## III. THE MISSING TRANSCRIPT

■ {6} After the initial appeal was docketed on February 5, 1996, Defendant's original appellate counsel sought and received several extensions for the filing of the Brief in Chief. On November 15, 1996, we granted a motion to allow the withdrawal of Defendant's original appellate attorney and the entry of new counsel. Defendant's new attorney noticed that the transcript of the plea hearing was absent from the record on appeal. After attempting to locate the transcript, defense counsel obtained an affidavit from the court monitor confirming that the tapes of the plea hearing were missing. Defense counsel then met with prosecutors and attempted to reconstruct a record of the hearing. On October 14, 1997, after it became apparent that the two parties could not reconstruct the record, defense counsel filed notice to that effect with the district court.

{7} Citing *State v. Moore*, 87 N.M. 412, 534 P.2d 1124 (Ct.App.1975), Defendant now claims that the missing transcript deprives him of his constitutional right to appeal and requires the reversal of his plea. Defendant has failed, however, to comply with the procedural predicate to such a claim. When a transcript of proceedings is either inaudible or unavailable, Rule 12–211(H) NMRA 2002 requires that the appellant "prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection[ ] ... within fifteen (15) days after the filing of the taped transcript of

proceedings in the appellate court or within thirty (30) days after service of the notice of a general calendar assignment, whichever is earlier." Here, Defendant has failed to prepare such a statement, and his notice indicating his inability to do so missed the relevant deadline by nearly a year and a half. By failing to comply with Rule 12–211(H), Defendant waived any claim regarding the completeness of the record. *See State v. Ruiz*, 119 N.M. 515, 521, 892 P.2d 962, 967 (Ct.App. 1995) (refusing to reach defendant's claim that a transcript erroneously omitted an objection to hearsay evidence because the defendant "did not avail himself of the methods by which erroneous transcripts may be corrected ... or unavailable transcripts may be recreated, [Rule] 12–211(H) [NMRA 2002]"); *cf. G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000–NMCA–003, ¶ 17, 128 N.M. 434, 993 P.2d 751 (declining to reach the appellant's claim that jury instructions were improper because the appellant had failed to supplement or recreate a transcript of the otherwise indecipherable jury instructions). We now address our standard for reviewing such a procedurally deficient claim when the defendant has been sentenced to death.

### A. Standard of Review

■ {8} Death penalty cases are different from non-capital cases. *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (plurality opinion) ("Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two."). The death penalty "is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity." *Furman v. Georgia*, 408 U.S. 238, 306, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (Stewart, J. concurring). The extraordinary penalty of death demands heightened scrutiny of its imposition. *See* NMSA 1978, § 31–20A–4(A) (1979) (requiring this court to automatically review a capital defendant's conviction and sentence); *State v. Allen*, 2000–NMSC–002, ¶ 61, 128 N.M. 482, 994 P.2d 728 (1999) (applying "a degree of scrutiny that reflects 'the

qualitative difference of death from all other punishments.' ") (quoting *California v. Ramos*, 463 U.S. 992, 998, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)); *Clark v. Tansy*, 118 N.M. 486, 490, 882 P.2d 527, 531 (1994) ("[T]his Court believes that death indeed is different from other sanctions and thus requires greater scrutiny").

{9} Despite the inherent difference between capital and non-capital cases, we subject the procedurally deficient claims of capital defendants, like those of non-capital defendants, to fundamental error review. *State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127 ("[A]bsent fundamental error, even in a death penalty case issues must be properly preserved."); *Allen*, 2000–NMSC–002, ¶ 17, 128 N.M. 482, 994 P.2d 728 (applying fundamental error review to the unpreserved claims of a capital defendant); *State v. Clark*, 108 N.M. 288, 301, 772 P.2d 322, 335 (1989) (same), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990). Fundamental error review differs from review for reversible error in the level of scrutiny each standard affords a given claim of error. *State v. Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176. Under *Cunningham*, fundamental error will be found only when there exist "circumstances that 'shock the conscience' or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Id.* Fundamental error review describes our affirmative duty to guard against injustice despite the procedural deficiency of a particular claim. *Clark*, 108 N.M. at 297, 772 P.2d at 331 (holding that fundamental error review should be applied "to prevent a miscarriage of justice"); *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991) (same).

{10} Because of the gravity and irrevocability of the death sentence, and the grave injustice that would accompany an erroneous execution, error in a capital case is more likely to rise to fundamental error than the same error in a non-capital case. In a capital case, a legal defense often represents the only lawful mechanism by which a defendant may preserve his or her life. Any error that encumbers that mechanism unfairly debilitates the defendant's claim to life, magnifies the risk of an erroneous execution, and necessarily constitutes a circumstance that "shock[s] the conscience" and "implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176. Thus, any error that impairs a defense against the death penalty, whether it arises from the sentencing or guilt phase of a capital trial, is, as a matter of law, fundamental. Such error may be distinguished from harmless error, which, even under the heightened scrutiny afforded capital cases, will never rise to fundamental error. *Compare id.* ¶ 12 (noting that the doctrine of fundamental error is never used to aid "strictly legal, technical, or unsubstantial claims") (quoting *State v. Garcia*, 19 N.M. 414, 421, 143 P. 1012, 1014–15 (1914)) *with State v. Zamora*, 91 N.M. 470, 474, 575 P.2d 1355, 1359 (Ct.App.1978) (defining harmless error as "error which is trivial or formal or merely academic and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case") (quoting *State v. Johnson*, 1 Wash.App. 553, 463 P.2d 205, 206 (Wash.Ct.App.1969)). *But see Snow v. State*, 800 So.2d 472, 477 (Miss.2001) ("Under [heightened scrutiny of capital convictions and sentences], what may be harmless error in a case with less at stake becomes reversible error when the penalty is death.").

{11} In holding that errors which impair a defendant's death penalty defense are per se fundamental, we join a number of jurisdictions that have demonstrated similar intolerance for error in capital cases, even when the defendant's claim is procedurally deficient.[2] We emphasize, however, that our

---

**2.** *See, e.g., State v. Hamilton*, 478 So.2d 123, 127, n. 7 (La.1985) ("In death penalty cases, this court has reviewed assignments of error, despite the absence of a contemporaneous objection, in order to determine whether the error 'render[ed] the result unreliable.' "); *Ice v. Commonwealth*, 667 S.W.2d 671, 674 (Ky.1984) ("[I]n a death penalty case every prejudicial error must be considered, whether or not an objection was made in the trial court."); *People v. Holman*, 103 Ill.2d 133, 82 Ill.Dec. 585, 469 N.E.2d 119, 140 (1984) ("[B]ecause of the qualitative difference between

intolerance for error in capital cases does not diminish the rule, articulated in *Clark*, 108 N.M. at 298, 772 P.2d at 332, that fundamental error does not apply when the defendant creates the error upon which he or she bases a claim. *But see Osborne*, 111 N.M. at 662, 808 P.2d at 632 (recognizing that mere responsibility for, or complicity in, an error does not constitute "creation" of error for the purposes of fundamental error analysis). Fundamental error will not be invoked when it appears that the defendant contrived a procedural default in order to benefit from its protections. With these principles in mind, we review Defendant's claim for fundamental error.

## B. Whether the Missing Transcript Constitutes Fundamental Error

■ {12} Clearly, the loss of the transcript of the plea hearing constituted error. The State attempts to blame Defendant for this error by observing that appellants normally carry the burden of furnishing the appellate court with a transcript of the lower court proceeding. *See* Rule 12–211(E) NMRA 2002. While this observation does reflect the general rule, it clearly does not contemplate the present situation, in which the trial court never made a transcript available to Defendant. In any case, for purposes of our fundamental error analysis, Defendant did not create this error. *Cf. Clark*, 108 N.M. at 297, 772 P.2d at 331.

■ {13} Although we reject, for reasons articulated below, the reconstruction hearing already conducted in this case, we are nevertheless confident that a new reconstruction hearing will restore the missing transcript. Such a hearing will neutralize any prejudice suffered by Defendant as a result of the missing transcript. *See Moore*, 87 N.M. at 413, 534 P.2d at 1125 (considering whether a substitute or alternative form of the record is attainable in determining whether the defendant's right to appeal had been impaired). Because this newly reconstructed record will provide Defendant a transcript upon which to base any potential appeal, we hold that his defense has not been impaired, and that the loss of the transcript remains harmless error. We do note, however, that if the judge who conducts the new reconstruction hearing determines that reconstruction is impossible or unreliable, Defendant's original plea must be vacated and he must be re-arraigned.

## IV. DEFENDANT'S ABSENCE FROM THE RECONSTRUCTION HEARING

■ {14} Defendant asserts that his absence from the reconstruction hearing violated his due process right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). In keeping with *Gagnon*, Rule 5–612(A) NMRA 2002 demands that a defendant be present "at the arraignment, at the time of the plea, at every stage of the trial including the impanelling of the jury and the return of the verdict and the imposition of any sentence, except as otherwise provided by this rule." We are not concerned with the fact that a reconstruction hearing does not fit neatly into the category of a "stage of the trial." We ordered the reconstruction hearing in order to develop evidence from which we could restore a factual account of the plea hearing. As the subject of the plea hearing, Defendant could very well have provided important information that would have aided his defense.

{15} The few jurisdictions that have addressed this issue have resolved it with such clarity and resolve as to make it seem irrefutable. In *People v. Braithwaite*, 190 A.D.2d 572, 593 N.Y.S.2d 464 (N.Y.App.Div. 1993), the court reviewed a reconstruction hearing conducted to replace the missing rec-

---

death and other forms of punishment ... this court has elected to address errors in death penalty cases which might have affected the decision of the sentencing jury."); *Commonwealth v. McKenna*, 476 Pa. 428, 383 A.2d 174, 181 (1978)

("The waiver rule cannot be exalted to a position so lofty as to require this Court to blind itself to the real issue-the propriety of allowing the state to conduct an illegal execution of a citizen.").

ord of a suppression hearing. Upon remand, the trial court had conducted the reconstruction hearing "in defendant's absence, and without any indication that defendant effectively waived his right to be present." *Id.* In response, the court held, *and the State conceded,* that "the matter must be remanded for a reconstruction hearing at which defendant, in the absence of knowing and voluntary waiver, has the right to be present." *Id.See also State v. Casimono,* 298 N.J.Super. 22, 688 A.2d 1093, 1095 (1997) ("At a minimum ... the defendant must have an opportunity to attend the [reconstruction] proceeding...."); *Cole v. United States,* 478 A.2d 277, 287 (D.C.1984) ("We are reluctant to find harmless error based on an account of appellant's testimony at trial which appellant has not had an opportunity to supplement or contest."). We agree with these cases and order a new reconstruction hearing at which Defendant must be present.[3]

{16} We also direct that a judge other than the original trial judge preside over the new reconstruction hearing. The general rule is that the "judge presiding at the trial may not testify in that trial as a witness." Rule 11–605 NMRA 2002. In keeping with this rule, Judge Pope refused to provide his recollection of the answers to a series of questions that he routinely asks pleading defendants. In the interests of facilitating the unhindered testimony of Judge Pope, the new reconstruction hearing must be conducted by another judge. Judge Pope may be called as a witness at the new proceeding.

## V. WAIVER OF A JURY FOR SENTENCING

{17} Finally, Defendant argues that the trial court erred in failing to fully inform him of the difference between sentencing by the court and sentencing by a jury. Although Defendant's conviction still depends on the outcome of the reconstruction hearing, we address his sentencing claim now, in the interest of judicial economy, and in order to avoid the necessity of another appeal. *State v. Garcia,* 121 N.M. 544, 550, 915 P.2d 300, 306 (1996) (allowing the defendant to withdraw his plea and, "for the purposes of judicial economy," reaching the issue of the validity of the defendant's sentence); *State v. Carrasco,* 1997–NMCA–123, ¶ 7, 124 N.M. 320, 950 P.2d 293 (addressing the defendant's due process claim even though the issue had already been resolved "since [the due process claim] is likely to reoccur following remand to the trial court"). Because trial counsel failed to tender an objection that would have preserved Defendant's claim that the trial court neglected to fully inform him of his right to be sentenced by a jury, we review the claim for fundamental error.

{18} Because the constitutional right to a jury predates the modern-day bifurcation of death penalty cases into guilt and sentencing phases, that right necessarily applies to both. *See* N.M. Const. art. II, § 12. The Act confirms that a defendant has a right to be sentenced by a jury. NMSA 1978, § 31–20A–1(B), –3 (1979). Under the Act, in order to impose a sentence of death, a sentencing jury must "unanimously specif[y] the sentence of death." NMSA 1978, § 31–20A–3 (1979).

{19} As a matter of pure probability, the requirement of jury unanimity means that while a defendant who is sentenced by a judge has only one chance of avoiding the death penalty, a defendant who is sentenced by a jury has twelve. *See, e.g., Lopez v. United States,* 615 A.2d 1140, 1147 (D.C. 1992) (recognizing, in the context of a crimi-

---

3. We disagree with the dissent's conclusion that *Chessman v. Teets,* 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957), precludes our holding. *Chessman* questioned the right of a defendant, who had personally submitted some 200 corrections to an existing transcript, to be represented at a proceeding to determine the accuracy of that transcript. Limiting itself to the facts of that case, the Supreme Court held that Chessman was entitled to be represented in person, or by counsel, at such a hearing. In the present case, we are dealing with a reconstruction hearing rather than an accuracy hearing, a missing transcript rather than an existing one, and a defendant who, unlike Chessman, was deprived of any personal participation in the proceeding. Moreover, even overlooking these differences, the Supreme Court's holding that the *ex parte* settlement of the transcript *violated* Chessman's due process rights simply does not bar this Court from requiring Defendant's presence at the reconstruction hearing that we are ordering.

nal trial, that being tried by a jury means that "twelve jurors must unanimously find guilt beyond a reasonable doubt, whereas at a bench trial, the prosecution must persuade only one trier of fact, namely the judge."). We agree with Defendant that a waiver of the right to be sentenced by a jury cannot be considered knowing and intelligent unless the defendant is aware of this critical aspect. *See Commonwealth v. O'Donnell,* 559 Pa. 320, 740 A.2d 198, 213 (1999) ("Given the unique role a sentencing jury plays in the penalty phase of a capital case, it also seems appropriate for any colloquy preceding a trial court's acceptance of a capital defendant's waiver to a penalty-phase jury to inform the defendant of the requirement under Pennsylvania law that a penalty-phase jury render a unanimous verdict.") (citation omitted); *Harris v. State,* 295 Md. 329, 455 A.2d 979, 984 (1983) (holding that the defendant did not effectively waive jury sentencing because, although he was informed of the jury unanimity requirement, he was not advised that a hung jury would mean a life sentence). This feature of jury sentencing is an especially crucial piece of information for a defendant who faces a potential sentence of death. The failure to advise Defendant of the requirement of jury unanimity in sentencing was error.

{20} The failure to fully advise Defendant of the nature of jury sentencing rendered his waiver unknowing and unintelligent. His unknowing and unintelligent decision to be sentenced by a judge, which in turn enabled that judge to sentence him to death, impaired his defense against the death penalty. This error was far more prejudicial than the sort of harmless error that we overlook when engaging in a fundamental error analysis. *See Cunningham,* 2000–NMSC–009, ¶ 12, 128 N.M. 711, 998 P.2d 176. We hold that the failure to advise Defendant of the requirement of jury unanimity constituted fundamental error. Consequently, we vacate Defendant's death sentence and remand to the district court for a new sentencing proceeding, pending the result of the new reconstruction hearing. Our remand for a new sentencing proceeding obviates Defendant's other arguments relating to his sentence.

## VII. CONCLUSION

{21} Defendant's waiver of jury sentencing was not voluntary, knowing and intelligent, because the trial court failed to advise him of the requirement of jury unanimity. The acceptance of that deficient waiver constituted fundamental error. We therefore vacate his death sentence. Defendant's guilty plea stands, but the transcript of that plea must be reconstructed in accordance with the following instructions: (1) Defendant must be present at the new reconstruction hearing; and (2) the trial judge, Judge Pope, may not preside over the hearing, but may testify. The presiding judge will determine whether the reconstructed record affirmatively demonstrates that the original plea was voluntarily, knowingly, and intelligently entered in accordance with Rule 5–303(F) NMRA 2002.

{22} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER and PETRA JIMENEZ MAES, Justices.

PATRICIO M. SERNA, Chief Justice (dissenting).

JOSEPH F. BACA, Justice (dissenting).

SERNA, Chief Justice (dissenting).

{23} Defendant Frank Martinez pleaded guilty to first degree murder, first degree criminal sexual penetration, conspiracy to commit murder, tampering with evidence, and second degree kidnapping of a twelve year old girl. I would affirm Defendant's convictions and sentence of death. The majority holds otherwise; thus, respectfully, I dissent. I agree with the majority's rejection of Defendant's argument that it was improper for Judge Pope to accept the plea because Judge Pearl was the assigned trial judge. I also agree with the majority's conclusion that, because a properly reconstructed record provides a basis for the review of his appeal, his right to appeal has not been impaired by the lost record. However, I firmly believe that the current reconstructed record is proper, and is perfectly adequate to review Defendant's conviction. Respectfully, I disagree with and dissent from the majori-

ty's conclusion that Defendant's presence was required at the reconstruction hearing and the majority's premature holding to vacate Defendant's death sentence. I believe that my position is consistent with and mandated by the federal and state constitutions, our statutes and cases, and our rules. Finally, I cannot agree with the majority's attempt to cede this Court's appellate review of Defendant's conviction to the district court.

{24} The majority states that "if the judge who conducts the new reconstruction hearing determines that reconstruction is impossible or unreliable, Defendant's original plea must be vacated and he must be re-arraigned." Majority opinion, ¶ 13. The majority concludes, "[t]he presiding judge will determine whether the reconstructed record affirmatively demonstrates that the original plea was voluntarily, knowingly, and intelligently entered in accordance with Rule 5–303(F) NMRA 2002." Majority opinion, ¶ 21. The majority has no authority, discussion, or basis for this directive. The majority's mandate effectively means that the district court's ruling on the validity of Defendant's plea following the second reconstruction hearing will be conclusive and not subject to review by this Court. However, it is clear to me that the resolution of Defendant's appellate claim of a defective plea must be made by this Court, as part of its original appellate jurisdiction over capital cases, rather than by the district court in the course of a remand which has as its sole purpose the settlement of the record on which Defendant's appeal is to be decided. The district court is without jurisdiction to determine whether Defendant's plea was voluntary. Defendant's case is currently before this Court on appeal. A reconstruction hearing determines, *for purposes of appellate review,* what took place at the hearing in which Defendant pleaded guilty. Under Rule 12–211(H) NMRA 2002, "the district court shall

settle and approve the transcript of proceedings. Upon approval, the district court clerk shall include the transcript of proceedings in the record proper and *immediately transmit it to the appellate court.*" (Emphasis added.) The only jurisdiction that the district court has in relation to the present case, on remand from this Court pursuant to Rule 12–211(H), is to reconstruct the record of the plea hearing. The reconstruction hearing does not provide yet another opportunity for Defendant to challenge the voluntariness of his plea.[1] Following a second reconstruction of the record, or the determination by the district court that the record cannot be reconstructed, Defendant's case must return to this Court for our review of his claims, including his unpreserved, and incorrect, argument that the State cannot prove that his guilty plea was knowing and voluntary and that he should be allowed to withdraw his plea. This Court cannot abdicate its original appellate jurisdiction over capital cases, as articulated in NMSA 1978, § 31–20A–4(A) (1979) and Article VI, Section 2 of the New Mexico Constitution, and thus, the district court can neither vacate Defendant's plea nor affirm Defendant's conviction, as directed by the majority. *See* Majority opinion, ¶¶ 13, 21.

## I. Facts and Background

### A. Defendant's 1993 Kidnapping, Rape, and Murder of the Victim

{25} The majority states that the facts of the present case do not inform the issue it addresses on appeal and are irrelevant. Majority opinion, ¶ 2 & n. 1. The majority then advances its belief that the facts are also not material to the issues I address.[2] I disagree. A review of the facts for context is a standard feature of appellate opinions, whether or not the facts are "grim" or "gruesome," as

---

1. In fact, in relation to the first reconstruction hearing, Defendant contends on appeal that Judge Pope's finding that the plea was knowing and voluntary was beyond the scope of the settlement of the record for appeal. Defendant states, "The purpose of Subpart H of Rule [12] 211 is to provide a procedure for reconstructing a lost or inaudible audiotape so the *appellate courts* can evaluate the legal significance of events below.

The purpose of the rule is narrow and the procedures it outlines purely ministerial."

2. Although irrelevant, immaterial, and not necessary context to the issues the majority addresses, the majority opinion nonetheless notes that "[n]o charges were dropped, nor did Defendant receive any other consideration, in exchange for his plea." Majority opinion, ¶ 2.

characterized by the majority. *Id.* Further, fundamental error review under our precedent requires analysis of the defendant's guilt or innocence, which in turn requires a discussion of the evidence in the case. Moreover, as explained below, I believe it is appropriate to review Defendant's challenge to his plea on the present record, and the review of a plea includes a review of the factual basis for the plea and a defendant's assertion of, or in this case failure to assert, factual innocence. The facts of this case are relevant to the issues on appeal.

{26} The majority also states that because the transcript of the plea hearing was lost, "we have no record of the facts underlying the plea," and the majority is "unwilling to proclaim the co-defendant's allegations the 'facts' of this case." Majority opinion, n. 1. John Paul Aguilar's testimony was given under oath subject to cross-examination by Defendant at his sentencing hearing; the record of this hearing, unlike the plea hearing, was not lost. Thus, this Court has a record of these facts. Apparently, because the record of the plea hearing was lost, the majority will not consider any material that is in the record, including the written plea agreement, the tape recorded sentencing hearing, and the transcribed reconstruction hearing. However, Defendant does not contest the facts as related by Aguilar. In fact, Defendant recites Aguilar's "allegations" as the evidence in his brief in chief to this Court. Moreover, the sworn testimony of a forensic pathologist regarding the physical evidence in this case corroborates Aguilar's "allegations." In addition, these facts are inherently contained in the plea agreement which is in the record on appeal and were found to exist by Judge Pope at the initial plea hearing, *see* Rule 5–304(G) NMRA 2002, by Judge Pearl at the sentencing hearing, and again by Judge Pope, beyond a reasonable doubt, at the reconstruction hearing. Therefore, like both parties in this appeal recognize, the sworn testimony of Defendant's accomplice is not a mere "allegation" and can be used to articulate the facts of this case.

{27} On the night of August 26, 1993, Defendant, John Paul Aguilar, and Ronnie Jaramillo drove a twelve-year-old child, an acquaintance of Aguilar, to a secluded area on Mount Taylor, near Grants, New Mexico. As they made their way up the mountain, Defendant, Aguilar, and Jaramillo stopped and sniffed gasoline. When the three returned to the vehicle, Aguilar made unwelcome sexual advances toward the child, and Jaramillo told her, "We're all going to f\* \* \* you." Jaramillo then drove farther up the mountain while Aguilar began kissing the victim. Either Defendant or Jaramillo told Aguilar to take off her pants. When Aguilar attempted to remove the child's pants, the victim "didn't want to," but the others told him to continue. The three continued farther up the mountain to a dirt road. After exiting the vehicle, the child tried to escape by running up the dirt road, but Defendant ran after her, caught her, and walked her back to the car. At that point, Aguilar and Jaramillo beat the child.

{28} Defendant threw the child onto the hood of the car and, despite her resistance, took off her pants. Defendant, Aguilar, and Jaramillo each, in turn, forced the child to have sexual intercourse. Following the rapes, Defendant, Aguilar, and Jaramillo discussed the situation behind the car, and the three men all agreed to kill the victim in order to silence her.

{29} The three men talked the child into getting out of the car, and Aguilar and Jaramillo began to beat the child. Jaramillo went back to the car to retrieve a small knife with a two-inch blade and then stabbed the child multiple times in the back. Jaramillo also cut the child's throat. When this action failed to kill her, Defendant tried to break the child's neck. During the assault, the victim attempted to speak to the men. Jaramillo then tried to strangle the victim, but his hands slipped into the wounds in her throat; he "grossed out" and could not continue to strangle her. Defendant finally took his belt, wrapped it around her neck, and stepped on her head, forcing her face into a puddle of water and mud in order to drown her.[3]

---

**3.** I emphatically reject Defendant's arguments regarding the victim as a "willing participant in

the defendant's conduct" and repeated implications that the victim had consensual intercourse

{30} After Defendant, Jaramillo, and Aguilar finally succeeded in killing the child, Defendant dragged the victim's body, with his belt around her neck, off the road and into the woods. Aguilar retrieved the gasoline from the car, and Defendant then doused her body with it and set her on fire. On the drive out of the mountains, the three men disposed of the victim's pants and a shoe that had been left in the vehicle.

{31} The forensic pathologist who performed the autopsy described the condition of the child's body. The victim had blunt trauma injuries on her head and face, including bruises on her face, forehead, lips, and cheek, consistent with injuries inflicted by fists or shoes. The victim's neck had three cuts which formed a five-inch wound, going up to, but not through, the trachea and into one of the bones, and not cutting into blood vessels. The victim also had six puncture wounds in her back which were inflicted while she was alive but did not enter into the chest or abdominal cavity. The victim had abrasions on her chest, hips, and legs, consistent with the body being dragged across an irregular surface. The victim's lungs were filled with muddy water, silt, and sand, indicating that she breathed in water with a lot of dirt and other material in it. Although all of her other wounds contributed to her death, the official cause of death was aspiration, or drowning. The victim's body had postmortem burns and blistering, and forensic evidence indicated recent sexual activity.

### B. Defendant's Guilty Plea and Sentencing Hearing

{32} Defendant was represented by experienced attorneys from the Death Penalty Division of the Public Defenders' office, including Marc Gordon and at least one other attorney. On January 15, 1995, at a hearing before District Judge John Pope, Defendant pleaded guilty to first degree murder, a capital offense with the possibility of the death penalty or life imprisonment, conspiracy to commit first degree murder, first degree criminal sexual penetration, second degree kidnapping, and tampering with evidence.[4] Defendant agreed to allow the court to conduct a sentencing hearing. Defendant signed a plea agreement, as did his trial counsel, the prosecutor, and the trial court. Defendant indicated, by signing the agreement, that he read the plea agreement and understood the proceeding, that he discussed the case and his constitutional rights with his lawyer, and that he understood that by pleading guilty, he gave up his right to a trial by jury, his right to confront, cross-examine, and compel the attendance of witnesses, and his right against self-incrimination. Defendant's counsel, Marc Gordon, signed the agreement, indicating that he discussed the case with Defendant in detail and "advised him of his constitutional rights and all possible defenses." Defendant's counsel also indicated that he believed that the plea and disposition set forth was appropriate under the facts of the case.

{33} On March 14, 1995, District Judge Martin Pearl held a sentencing hearing. Defendant was represented by four attorneys: Marc Gordon, Jacquelyn Cooper, Kari Converse, and Joseph Shattuck. Defendant, for the second time, waived his right to be sentenced by a jury. Judge Pearl heard evidence and argument of counsel. On April 7, he sentenced Defendant to death for the capital offense and to thirty-seven and one-

---

with him. Even if the child voluntarily got into the car with her attackers, the record clearly establishes by uncontested evidence that she attempted to escape by running away, that Defendant, Aguilar, and Jaramillo forcibly raped the twelve-year-old child, they kidnapped her, and she did nothing to "participate" in her horrific murder. Additionally, Defendant pleaded guilty to criminal sexual penetration in the first degree. Under NMSA 1978, § 30-9-11(C)(1) (1993, prior to 1995 & 2001 amendments), "all sexual penetration perpetrated ... on a child under thirteen years of age" is criminal sexual penetration in the first degree, meaning that the child was incapable of consenting. I remind appellate

counsel of the duty of candor toward this Court. Rule 16-303 NMRA 2002 ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal.").

4. Pursuant to NMSA 1978, § 30-2-1 (1980, prior to 1994 amendment) (murder in the first degree), Section 30-9-11(C) (criminal sexual penetration in the first degree), NMSA 1978, § 30-28-2 (1979) (conspiracy), NMSA 1978, § 30-22-5 (1963) (tampering with evidence), and NMSA 1978, § 30-4-1 (1973, prior to 1995 amendment) (kidnapping).

half years imprisonment on the remaining charges.

### C. Defendant's Appeal

{34} Defendant appealed to this Court by filing a docketing statement listing his grounds for appeal on February 5, 1996. In the docketing statement, Defendant noted that he pleaded guilty to the charges and had stipulated that the trial court would conduct the sentencing phase pursuant to NMSA 1978, § 31–20A–3 (1979). Defendant did not challenge his guilty plea in his docketing statement. In other words, Defendant did not raise any issue or error relating to his guilty plea.

{35} It was later discovered that a state employee lost or mislaid the audio tapes and the tape log of Defendant's plea hearing, in which Defendant had pleaded guilty and waived his right to sentencing by a jury. Upon discovering the lost record, Defendant filed a motion for summary reversal on October 30, 1997. For the first time, over two and one-half years after he pleaded guilty, Defendant argued that he should be able to withdraw his plea because the State could no longer demonstrate that it was voluntary, knowing, and intelligent.

### D. Defendant's 1998 Reconstruction Hearing

{36} This Court denied Defendant's motion for summary reversal and ordered a reconstruction of the record pursuant to Rule 12–211. On February 10, 1998, Judge Pope held the reconstruction hearing. Judge Pope entered an order reconstructing the record on August 19, finding that, beyond a reasonable doubt, Defendant was instructed regarding his rights, understood those rights, and knowingly, voluntarily, and intelligently entered his guilty plea. Defendant was not present at this hearing; he was not subpoenaed, and neither party requested a transport order to secure his attendance at the hearing. Defendant did subpoena his trial counsel, and although they were present, his appellate counsel did not call them as witnesses and, in fact, called no witnesses.

{37} In November of 1998, Defendant filed a motion for summary reversal on the basis of his absence from the reconstruction hearing. His motion was substantially similar to the argument later contained in his brief in chief for this appeal regarding the issue of his presence at the reconstruction hearing. Both Defendant and the State fully briefed this issue on Defendant's motion. A three-member panel of the Court, including myself, carefully considered and rejected Defendant's argument. This panel unanimously denied Defendant's motion on January 7, 1999. The majority now considers Defendant's argument on presence and, over three years after this unanimous panel decision, is allowing Defendant to have a new reconstruction hearing at which he is present. I do not believe that the panel of this Court erred three years ago in denying Defendant's motion. I continue to believe, as discussed below, that Defendant's presence was not required at the reconstruction hearing. My conclusion is supported by binding precedent from the United States Supreme Court, as well as persuasive authority from other jurisdictions.

### II. Defendant's Guilty Plea

### A. Preliminary Issues

### 1. Defendant's Challenges to His Guilty Plea

{38} Defendant did not challenge his guilty plea in the trial court and never filed a motion to withdraw the plea; he thus did not preserve any argument regarding his guilty plea. Defendant raises only two issues regarding his convictions and guilty plea: (1) he argues that the State cannot prove whether he knowingly, voluntarily, and intelligently entered his guilty plea due to the lost record of the plea hearing; and (2) he argues that it was improper for Judge Pope to accept the plea because he was not the assigned trial judge. Not only are these arguments unpreserved, I also reject Defendant's second argument because he has failed to support it with authority. *See* Rule 12–213(A)(4) NMRA 2002; *State v. Allison*, 2000–NMSC–027, ¶ 30, 129 N.M. 566, 11 P.3d 141.[5]

---

**5.** Although Defendant cites Rule 5–304, there is nothing in this rule that supports his claim.

## 2. Heightened Scrutiny and the Death Penalty

{39} Defendant asserts that, because of the imposition of the death penalty, he is entitled to greater scrutiny. The majority agrees with this argument. Majority opinion, ¶ 8. I agree that, under our precedent, Defendant is entitled to greater scrutiny regarding his sentence of death. *State v. Clark*, 108 N.M. 288, 296, 772 P.2d 322, 330 (1989), *overruled on other grounds by State v. Henderson*, 109 N.M. 655, 664, 789 P.2d 603, 612 (1990), *overruled on other grounds by Clark v. Tansy*, 118 N.M. 486, 493, 882 P.2d 527, 534 (1994). However, Defendant is not entitled to greater scrutiny regarding his conviction. *See Caldwell v. Mississippi*, 472 U.S. 320, 329, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (stating that there is a "qualitative difference of death from all other punishments [that] requires a correspondingly greater degree of scrutiny of the capital *sentencing* determination" (emphasis added)); *cf.* § 31–20A–4(D) (providing that "[n]o error in the sentencing proceeding shall result in the reversal of the conviction of a capital felony"). In our previous death penalty cases, this Court restricted its application of heightened scrutiny to the review of the sentence, not the conviction. *State v. Allen*, 2000–NMSC–002, ¶ 61, 128 N.M. 482, 994 P.2d 728 (applying heightened scrutiny to a review of the death sentence), *cert. denied*, 530 U.S. 1218, 120 S.Ct. 2225, 147 L.Ed.2d 256 (2000). "In assessing the death penalty we must apply that greater degree of scrutiny called for by the Constitution." *Henderson*, 109 N.M. at 661, 789 P.2d at 609 (quotation marks and quoted authority omitted). This reference was to the United States Supreme Court's interpretation of the federal constitution in *California v. Ramos*, 463 U.S. 992, 999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). The constitutional requirement of heightened scrutiny to which we referred in *Henderson* does not apply to the review of a conviction, only the sentence. *See Turner v. Murray*, 476 U.S. 28, 37–38, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) (affirming the defendant's conviction but vacating a death sentence on an issue implicating both aspects of the case due to "the special seriousness of the risk of improper sentencing in a capital case").

## 3. New Mexico's Established Precedent Regarding Fundamental Error

{40} Rule 12–216(A) NMRA 2002 provides that, for an appealing party to preserve a question for review, "it must appear that a ruling or decision by the district court was fairly invoked." "This rule shall not preclude the appellate court from considering ... in its discretion, questions involving ... fundamental error...." Rule 12–216(B). "[A]bsent fundamental error, even in a death penalty case issues must be properly preserved." *State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127; *accord Allen*, 2000–NMSC–002, ¶ 17, 128 N.M. 482, 994 P.2d 728 (affirming a death sentence and applying a fundamental error analysis to unpreserved issues). "With regard to a criminal conviction, the doctrine is resorted to only if the defendant's innocence appears indisputable or if the question of his [or her] guilt is so doubtful that it would shock the conscience to permit the conviction to stand." *Clark*, 108 N.M. at 301, 772 P.2d at 335 (citation omitted). "If substantial justice has been done, parties must have duly taken and preserved exceptions in the lower court before we will notice them here." *State v. Garcia*, 19 N.M. 414, 421–22, 143 P. 1012, 1015 (1914) (opinion on rehearing).

{41} The majority cites with approval our earlier cases which applied fundamental error in a death penalty context. *See* Majority opinion, ¶ 9. The majority states that "any error that impairs a defense against the death penalty, whether it arises from sentencing or guilt phase of a capital trial, is, as a matter of law, fundamental." Majority opinion, ¶ 10. The majority does not purport to overrule our prior precedent, so despite this broad language, this articulation must be understood in harmony with the fundamental error review that this Court has developed in prior cases. *See, e.g., Jacobs*, 2000–NMSC–026, ¶¶ 12, 17, 129 N.M. 448, 10 P.3d 127 (concluding that an unpreserved joinder issue, reviewed for fundamental error, was not misjoinder); *Allen*, 2000–NMSC–002, ¶¶ 17, 27, 30, 34, 128 N.M. 482, 994 P.2d 728 (hold-

ing that an evidentiary issue as well as certain categories of prosecutorial misconduct in a death penalty case was either not error or that the errors did not make "the question of guilt so doubtful that it would shock the conscience to permit the conviction to stand" (quoted authority and internal quotation marks omitted)); *State v. Cheadle*, 101 N.M. 282, 288, 681 P.2d 708, 714 (1983) (addressing an argument in which the defendant disputed whether there was sufficient evidence to send the aggravating factor to the jury and stating that "[o]bjections to jury instructions *cannot* be raised for the first time on appeal" and that "since this objection was not raised at the trial court level, [the defendant] is precluded from raising it now"). The defendant must demonstrate that the alleged error was not harmless. *Cf. United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (stating that the defendant must show that a forfeited error affected the outcome of the proceeding).

**B. Withdrawal of Defendant's Plea**

**1. Voluntariness of Defendant's guilty plea**

{42} As discussed above, the majority attempts to relinquish our duty to review Defendant's guilty plea to the district court. No matter what the district court determines with regard to his guilty plea in the reconstruction hearing, this case must return to this Court for completion of appellate review. Defendant contends on direct appeal to this Court that the State cannot demonstrate that his plea was knowing and voluntary and that, therefore, he should be allowed by this Court to withdraw his plea. A defendant who pleads guilty to a criminal offense pursuant to Rule 5-304 but wishes to withdraw his or her plea must make a timely motion for withdrawal and prove that withdrawal is necessary to correct a manifest injustice. *Clark*, 108 N.M. at 292, 772 P.2d at 326; Rule 5-304 committee commentary. On appeal, this Court reviews the trial court's ruling on a motion to withdraw the plea prior to sentencing for an abuse of discretion, *Clark*, 108 N.M. at 292, 772 P.2d at 326, Rule 5-304 committee commentary, and we review a trial court's ruling on a post-sentencing motion for

a miscarriage of justice, *see, e.g., United States v. Isom*, 85 F.3d 831, 834 (1st Cir. 1996), or a manifest injustice, *see State v. Barnett*, 1998-NMCA-105, ¶ 26, 125 N.M. 739, 965 P.2d 323. However, Defendant did not move to withdraw his plea in the district court, either before or after the sentencing proceeding. Defendant did not even assert any error with his guilty plea in his docketing statement with this Court. In other words, he did not, and apparently could not, find any error in his guilty plea. Although he could not have alerted the trial court of the lost record until he became aware that it was missing, he had ample opportunity to alert the trial court of any error in his plea, both before and after sentencing. Defendant is simply attempting to take advantage of the circumstance of the lost record to attack his guilty plea despite the lack of any error with his plea.

{43} In New Mexico, if a defendant fails to file a motion to withdraw a plea in the trial court, he or she cannot attack the plea for the first time on direct appeal. *See State v. Madrigal*, 85 N.M. 496, 500, 513 P.2d 1278, 1282 (Ct.App.1973) (declining to review a claim raised for the first time on appeal that the defendant did not understand the consequences of his guilty plea before acceptance); *see also State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994) (stating that "a plea of guilty or nolo contendere, when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal"). Under this authority, Defendant cannot claim for the first time on direct appeal that his plea was not knowing or voluntary; he would be limited to seeking relief in collateral proceedings. Thus, regardless of the outcome of the reconstruction hearing ordered by the majority, this Court must decide whether Section 31-20A-4(A) creates, for death penalty cases, an exception to this general rule and requires that we consider Defendant's request to withdraw his plea. Even if this Court determined that review of Defendant's claim is appropriate on direct appeal, Defendant would still be required to demonstrate a manifest injustice or

a miscarriage of justice in order to withdraw his plea, as explained below. Thus, even though the majority does not address the merits of Defendant's voluntariness of the plea claim at this time, I believe this Court must resolve Defendant's claim on appeal following the remand for the reconstruction hearing.

{44} If a defendant properly preserves a claim of an unknowing or involuntary plea by filing a motion to withdraw the plea, the defendant must demonstrate a manifest injustice to the trial court. *Barnett*, 1998–NMCA–105, ¶ 26, 125 N.M. 739, 965 P.2d 323 ("[A] defendant generally may not withdraw a guilty plea as a matter of right after sentencing unless the defendant proves that the withdrawal is necessary to correct a manifest injustice."); *accord Clark*, 108 N.M. at 292, 772 P.2d at 326; *State v. Knerr*, 79 N.M. 133, 136, 440 P.2d 808, 811 (Ct.App.1968); Rule 5–304 committee commentary. If the defendant makes such an argument for the first time on appeal, and such an argument is entertained by the appellate court, the defendant still must demonstrate a manifest injustice before the plea may be vacated or withdrawn. *E.g., United States v. Blackwell*, 127 F.3d 947, 956 (10th Cir.1997). A manifest injustice in this context is defined as " 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *United States v. Baker*, 790 F.2d 1437, 1438 (9th Cir.1986) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417, (1962)); *accord United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir.1990). Thus, if it is proper under Section 31-20A-4(A) to address Defendant's unpreserved challenge to his guilty plea, Defendant must demonstrate a manifest injustice or a complete miscarriage of justice.

{45} I believe that Defendant's challenge to his plea is properly before this Court at this time and that a second reconstruction hearing is unwarranted. Assuming arguendo that Section 31–20A–4(A) requires the review of Defendant's claim on direct appeal, I ad-

dress whether Defendant has demonstrated a manifest injustice or miscarriage of justice sufficient to withdraw his plea. I review the question of whether Defendant's plea was knowing and voluntary by viewing the facts in the record in a light most favorable to upholding the plea because these facts were never subjected to the district court's review on a motion to withdraw the plea. *See generally United States v. Akinsola*, 105 F.3d 331, 333 (7th Cir.1997) ("[A] motion to withdraw a guilty plea, even if denied, is nevertheless helpful on appeal because the trial court will have made a record which we can, in turn, review. There is no record here as [the defendant] did not seek relief in the district court. He came, instead, straight to our door where, because he bypassed the district judge, we apply a plain error review to the case."). In reviewing whether a defendant has shown a manifest injustice sufficient to withdraw a plea, a court must consider the following factors: whether the defendant was denied the effective assistance of counsel, whether the plea was not entered or ratified by the defendant or a person authorized to do so on his or her behalf, and whether the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed. *Clark*, 108 N.M. at 292, 772 P.2d at 326; Rule 5–304 committee commentary. In addition, a court may consider whether the defendant has asserted his or her innocence, whether the State will be prejudiced if the motion is granted, whether the defendant has delayed in filing the motion, and whether the granting of the motion would cause a waste of judicial resources. *See Clark*, 108 N.M. at 292, 772 P.2d at 326; *United States v. Carr*, 80 F.3d 413, 420 (10th Cir.1996).

{46} In this case, it is critically important that Defendant has not asserted his innocence.[6] "There can be no manifest injustice in refusing to permit a defendant to withdraw a guilty plea when there is no serious contention that the defendant is innocent of the crimes charged." *United States v. Nagra*, 147 F.3d 875, 880 (9th Cir.1998). Additionally, Defendant greatly delayed any con-

---

6. Because an assertion of innocence, or lack thereof, is relevant to the question of whether a defendant should be allowed to withdraw a plea,

the majority is incorrect in asserting that the facts of this case are irrelevant to my analysis.

test of the guilty plea, and a withdrawal of the plea after such a long delay would undoubtedly prejudice the State. Defendant also does not contend that he received ineffective assistance of counsel.[7] Finally, although Defendant claims that the State cannot prove that his plea was knowing and voluntary, he does not affirmatively assert that the plea was either unknowing or involuntary. With this context in mind, I must determine which facts are appropriately before this Court for its review of Defendant's claim, and I thus first address his argument regarding the reconstruction of the record.

## C. Reconstruction Hearing

### 1. Waiver of Defendant's Objection to the Completeness of the Record

{47} Defendant claims that the record of the plea hearing was lost and cannot be meaningfully reconstructed; thus, he argues that because the State cannot demonstrate that his waiver of a trial was voluntary, knowing, and intelligent, he is entitled to withdraw his plea. I disagree. The majority also agrees that the loss of Defendant's record does not entitle him to withdraw his plea. Majority opinion, ¶ 13. Although Defendant is presumably not responsible for the lost record, as discussed below, he did not comply with the rules of reconstruction or exercise the opportunity this Court gave him to reconstruct the record.

{48} It is well established in New Mexico that the appellant carries the burden of ensuring that the appellate court is provided with a complete record and transcript of proceedings sufficient to review the appellant's claims. Rule 12–211(E) ("Each appellant shall be responsible for the timely preparation and filing of the transcript of proceedings."); *State v. Wilson*, 116 N.M. 793, 797, 867 P.2d 1175, 1179 (1994) ("It was defendant's burden to make a sufficient record for review on appeal."); *State v. Padilla*, 95 N.M. 86, 88, 619 P.2d 190, 192 (Ct. App.1980) (affirming second-degree murder conviction, stating that "[i]t is defendant's

burden to bring up a record sufficient for review of the issues he raises on appeal," and upholding the trial court's admission of a confession despite a presumption of taint from another suppressed statement by "resolving all inferences in favor of the trial court's ruling"). In accordance with this principle, Rule 12–211(H) directs that an appellant "shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection" if a transcript of proceedings is either unavailable or inaudible. This rule therefore places an affirmative duty on the part of the appellant to attempt to cure an unavailable record on appeal.

{49} In this case, Defendant, upon learning of the unavailable transcript, moved for summary reversal. However, Defendant did not comply with Rule 12–211(H) by providing a statement of the evidence or proceedings. In fact, Defendant has never provided this Court or the district court with his version of what transpired during the plea hearing. The majority agrees that "Defendant has failed to prepare such a statement, and his notice indicating his inability to do so missed the relevant deadline by nearly a year and a half." Majority opinion, ¶ 7.

{50} Although Defendant was not present at the reconstruction hearing, Defendant had the opportunity to provide a statement of the evidence in accordance with Rule 12–211(H). Additionally, Defendant subpoenaed his trial attorneys for the reconstruction hearing, but his appellate counsel chose not to call them to the stand. Even in his brief to this Court, Defendant does not offer an account of the plea hearing or allege any specific defect in the taking of the plea. Defendant simply contends that the State is unable to demonstrate that Defendant voluntarily and knowingly pleaded guilty at the plea hearing. Defendant does not contend that he did not waive his constitutional rights at the plea hearing, that he did not understand the nature of the charges against him and the potential penalties for those charges, or that

---

7. Although Defendant raised the issue of ineffective assistance of counsel in his docketing statement, he did not assert this claim in his brief in chief. This claim is thus abandoned. *See Clark*,

108 N.M. at 311, 772 P.2d at 345; *State v. Clark*, 1999–NMSC–035, ¶ 3, 128 N.M. 119, 990 P.2d 793.

Judge Pope failed to comply with either constitutional requirements or specific requirements of Rule 5–304(E). In other words, Defendant attempts to rely on the unavailable transcript as a means of reversal in itself. However, because it is Defendant's burden in the first instance to attempt to cure an unavailable record, Defendant is prevented from making this argument. By failing to provide a statement of the evidence, Defendant has waived any claim regarding the completeness of the record. *See G & G Servs., Inc. v. Agora Syndicate, Inc.,* 2000–NMCA–003, ¶ 17, 128 N.M. 434, 993 P.2d 751 (declining to reach an issue concerning the propriety of civil jury instructions because "[t]he record does not reflect that [the appellant] sought to supplement or recreate the record or transcript pursuant to the avenues available to it under our rules"), *cert. quashed,* 129 N.M. 520, 10 P.3d 844 (2000); *State v. Gutierrez,* 119 N.M. 658, 660, 894 P.2d 1014, 1016 (Ct.App.1995) ("For purposes of this appeal, defense counsel should have prepared a statement of proceedings reconstructing what occurred at the bench conference. [Rule] 12–211(H). Counsel's failure to attempt to reconstruct the record could cause this Court to impose sanctions, including refusal to consider an issue...."); *State v. Ruiz,* 119 N.M. 515, 521, 892 P.2d 962, 967 (Ct.App.1995) ("Defendant did not avail himself of the methods by which erroneous transcripts may be corrected, [Rule] 12–211(C)(4), or unavailable transcripts may be recreated, [Rule] 12–211(H). Accordingly, we do not reach this issue."); *cf. Ford v. Bd. of County Comm'rs,* 118 N.M. 134, 140, 879 P.2d 766, 772 (1994) (concluding that an issue raised by an appellant for which the appellant failed to provide a complete record was waived).

{51} New Mexico's Rule 12–211(H) is derived from Rule 10(c) of the Federal Rules of Appellate Procedure, and our rule is nearly identical to the federal rule. Federal courts interpreting Rule 10(c) have concluded that the appellant's failure to file a statement of the evidence results in a waiver of the claim on appeal. *See, e.g., Pascouau v. Martin Marietta Corp.,* No. 98–1099, 185 F.3d 874, 1999 WL 495621, at *3 (10th Cir. July 14, 1999) (unpublished opinion) (declining to re-

verse for a new trial based on missing testimony when the appellant failed to avail herself of the remedy of providing a statement of evidence under Rule 10(c)); *United States v. Mills,* 597 F.2d 693, 698 (9th Cir.1979) ("Appellant made no attempt to follow the procedures prescribed by Rule 10(c).... Since no record is provided upon which his claim can be evaluated, it must be denied.").

[A] party may not seek a new trial simply because matters occurring in the district court are not reflected in the transcript. Rather, that party must at least attempt to cure the defect by reconstructing the record as provided by [Rule] 10(c). In certain cases this effort may unavoidably fall short of the precision necessary for a record amenable to review, and a new trial may be necessary. However, a new trial is not appropriate where the lack of a record is the only error charged and where the appellant made no effort to reconstruct the missing record nor to give any cause for that failing.

*Herndon v. City of Massillon,* 638 F.2d 963, 965 (6th Cir.1981) (citation omitted); *accord Cole v. United States,* 478 A.2d 277, 283–84 (D.C.1984) ("[T]he appellant has the option either to prepare a substitute statement or to forfeit any claim that he or she has been prejudiced by the absence of a transcript. When an appellant refuses to make reasonable efforts to prepare a 10(j) statement from the best available means, this court will not entertain a claim that the record on appeal is insufficient to permit meaningful review."); *State v. Bates,* 84 Hawai'i 211, 933 P.2d 48, 54–55 (1997) ("[A] defendant has a duty to reconstruct, modify, or supplement the missing portions of the record, and a failure to make a reasonable attempt to do so precludes him or her from alleging reversible error.... [A] party is not entitled to a new trial, because of the absence of a vital portion of the record, without first having attempted to supplement the record by proceeding under Rule 10(c).").

{52} Defendant relies on *Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989) to claim that the missing record creates a presumption of prejudice. In *Manlove,* this Court stated that "[w]hen a defendant raises

a reasonable possibility of error involving his [or her] constitutional rights, the prosecution must rebut the resulting presumption of prejudice beyond a reasonable doubt." *Id.* at 477, 775 P.2d at 243. However, Defendant did not raise a reasonable possibility of error involving his right to appeal. *See id.* (discussing a *contested* detail in the trial transcript). His sole contention is that the absence of the record warrants a new trial; he does not offer any contested view of the facts of the plea hearing which would raise a reasonable possibility of error nor does he point to any specifics in the missing record that otherwise caused prejudice to his right to appeal. *Cf. Allen*, 2000–NMSC–002, ¶ 113, 128 N.M. 482, 994 P.2d 728. Defendant is not exempted from complying with the requirements of Rule 12–211(H). Based on the weight of this authority and the text of Rule 12–211(H), I conclude that Defendant waived any claim that the record is insufficient to permit appellate review or that the missing record infringes on his right to appeal.

## 2. Procedures Utilized in Reconstructing the Record

{53} Had Defendant not waived his claim, this Court would "weigh the possible significance of the missing material to a defendant's right of appeal against such facts proffered by the state as would mitigate or eliminate its significance." *Manlove*, 108 N.M. at 477, 775 P.2d at 243. The State in this case demonstrated at the reconstruction hearing that Defendant's appeal was not prejudiced by the missing record, and the majority agrees that a properly reconstructed record will permit meaningful appellate review. However, Defendant argues that the trial court erred in the manner in which it conducted the reconstruction hearing. As discussed below, I conclude that the trial court's reconstruction hearing was proper.

{54} Our remand order referred to Rule 12–211(I) as authority for the reconstruction hearing:

> The parties may agree upon a statement of facts and proceedings and stipulate that they deem the statement sufficient for purposes of review, and the statement shall be filed as a transcript of proceedings within

sixty (60) days of service of the general calendar assignment, unless otherwise ordered by the appellate court.

If the parties cannot reach an agreement under Rule 12–211(I), Rule 12–211 provides for the additional authority of the district court to ascertain an accurate representation of the missing record from the parties' statements.

> [I]f a transcript of proceedings is unavailable ..., the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection.... If there are any objections or proposed amendments thereto, the objections or amendments shall be submitted to the district court for settlement and approval. Within fifteen (15) days after filing of the objections or amendments, *the district court shall settle and approve the transcript of proceedings.*

Rule 12–211(H) (emphasis added). This rule establishes the district court's authority to resolve any conflicts arising from an unavailable, inaudible, or otherwise incomplete record.

{55} Rule 12–211(H) directs the district court to "settle and approve the transcript of proceedings" following the parties' submission of their respective accounts of the plea hearing. Although the rule does not specifically provide for an evidentiary hearing, such a hearing would be an appropriate way to effectuate the goal of obtaining an accurate representation of the original proceeding. Further, Rule 12–211(H), by providing that an appellant may rely on "recollection," contemplates that witnesses may testify concerning general events occurring at the prior proceeding rather than requiring a verbatim recitation of the proceeding. Defendant notes that his appellate counsel relied on Rule 5–303(G) for requiring a verbatim record. However, Defendant does not contend that the district court failed to make a verbatim record in compliance with Rule 5–303(G). Instead, he appears to claim that Rule 5–303(G) governs record reconstruction. I reject this claim. We promulgated Rule 12–211 as the specific procedure to govern missing or unavailable transcripts of proceedings.

Rule 5–303(G) does not apply to record reconstruction. In fact, it would be unreasonable to expect any participant in a hearing to be able to recall at a later time every word uttered in the proceeding verbatim. As a matter of common sense, then, Rule 12–211(H) cannot be intended to require a verbatim recitation of a prior proceeding. Although the majority does not address this issue, it properly does not require a verbatim recitation. *See* Majority opinion, ¶ 21 (holding that a reconstruction hearing, conducted with a new trial judge and in Defendant's presence, would provide a valid substitute for the missing transcript). Other courts have interpreted similar appellate rules concerning unavailable transcripts to allow testimony in narrative form. *See, e.g., Commonwealth v. Quinones*, 414 Mass. 423, 608 N.E.2d 724, 730–31 (1993) (stating that a trial court properly relied on recollection of "only the substance of the [plea] colloquy and not the precise words used").

{56} The desired product of a reconstruction hearing is a reasonably accurate representation of the events that occurred during Defendant's plea hearing in order to permit effective appellate review. *See State v. Williams*, 227 Conn. 101, 629 A.2d 402, 405–06 (1993). Therefore, the trial court properly used an evidentiary hearing and the testimony of witnesses' general recollection of the prior proceeding as an appropriate method to settle the record pursuant to Rule 12–211(H).

### 3. Defendant's Absence at the Reconstruction Hearing

{57} Defendant notes that he was not present at the reconstruction hearing, and he argues that his absence violated his due process rights. Defendant relies on the federal constitution, as interpreted by federal courts, and makes no arguments regarding our constitution.[8] I reject this argument.

{58} As described in the above sections of my dissent, Defendant pleaded guilty to the 1993 kidnapping, rape, and murder of a twelve-year-old child in 1995. The majority is remanding this case, three years after Defendant's last reconstruction hearing, for a new reconstruction hearing on this basis, despite the rejection of this very issue by a panel of this Court in 1999. The majority's analysis on this issue consists of two paragraphs containing three out-of-state cases which are not on point. The majority bases its discussion on the federal constitution. *See Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).[9]

{59} The majority claims that "[t]he few jurisdictions that have addressed this issue have resolved it with such clarity and resolve as to make it seem irrefutable." Majority opinion, ¶ 15. The majority is mistaken. There is clear, decisive, and authoritative precedent that irrefutably establishes that Defendant had no right to be present at the reconstruction hearing. On point authority

**8.** Defendant also asserts that because he was not present, his appellate attorneys were unable to make a decision whether or not to call the trial attorneys to testify, raising an attorney-client privilege. Any testimony by Defendant's trial attorneys regarding the proceedings occurring in open court during his plea hearing do not implicate an attorney-client privilege because it does not involve a confidential communication. Rule 11–503 NMRA 2002. This argument is therefore meritless.

**9.** The majority's reference to Rule 5–612(A) NMRA 2002 is based solely on the rule's similarity to the constitutional standard articulated in *United States v. Gagnon*, 470 U.S. 522, 527, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). Majority opinion, ¶ 14. As the majority concedes, the plain text of this rule limits its application to trial proceedings, and it thus does not extend to an appellate reconstruction process. "The rule says nothing about post-conviction hearings, such as [a hearing on a motion to reconsider sentence],

at which sentence is not imposed." *State v. Sommer*, 118 N.M. 58, 59, 878 P.2d 1007, 1008 (Ct.App.1994). A reconstruction hearing is not a stage of the trial within the meaning of Rule 5–612(A) and has no affect on the defendant's guilt. Instead, it is a stage in an appeal. Indeed, our rule permitting the reconstruction of a record appears not in the Rules of Criminal Procedure, as with Rule 5–612, but in the Rules of *Appellate* Procedure in Rule 12–211. Further, Defendant was represented at the hearing by his *appellate* counsel. *See Snyder v. Massachusetts*, 291 U.S. 97, 107, 54 S.Ct. 330, 78 L.Ed. 674 (1934) ("The underlying principle gains point and precision from the distinction everywhere drawn between proceedings at the trial and those before and after. Many motions before trial are heard in the defendant's absence, and many motions after trial or in the prosecution of appeals."), (*overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 2 n. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

from the United States Supreme Court, as well as authority from North Carolina and Texas supports the position that Defendant's presence was not required at the reconstruction hearing.

{60} The United States Supreme Court, in a death penalty case, has squarely addressed the due process requirements for a record reconstruction and has held that an *"ex parte* settlement of [a] state court record violate[s] [a defendant's] constitutional right to procedural due process" because the defendant has a right "to be represented throughout those proceedings *either in person or by counsel." Chessman v. Teets,* 354 U.S. 156, 162, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957) (emphasis added) (relying on *Snyder* ). In response to an *ex parte* settlement of a record by a California court in a death penalty case, the Supreme Court noted that "[i]f California chose to deny petitioner's request to appear in those proceedings *in propria persona,* it then became incumbent on the State to appoint counsel for him." *Id.* Thus, the Supreme Court has determined that appearance at a reconstruction hearing through counsel satisfies the requirements of due process and adequately affords a defendant his or her "day in court upon the controversial issues of fact and law involved in the settlement of the record." *Id.* at 164. This Court is bound by the Supreme Court's holding that the Fourteenth Amendment right to due process does not require Defendant's presence at the reconstruction hearing when, as here, his interests were adequately protected by counsel.

{61} The majority mischaracterizes the facts in *Chessman* as "a defendant, who had personally submitted some 200 corrections to an existing transcript, to be represented at a proceeding to determine the accuracy of that transcript." Majority opinion, n. 3. The majority distinguishes *Chessman* by stating that the transcript in the present case is missing while *Chessman* involved "an existing one." *Id.* An unavailable record includes both missing and incomplete records. Under Rule 12–211(H), "if a transcript of proceedings is *unavailable* or *inaudible,* the appellant shall prepare a statement of the evidence or proceedings from the best available means. . . .

[T]he district court shall settle and approve the transcript of proceedings." (Emphasis added). In *Chessman,* contrary to the majority's description, there was not an existing transcript prior to the reconstruction. Instead,

the official court reporter of the trial proceedings suddenly died, having at that time completed the dictation into a recording machine of what later turned out to be 646 out of 1810 pages of the trial transcript. Following the denial of the petitioner's motion in the Superior Court for a new trial, there ensued a preparation and settlement of the trial transcript constituting the appellate record upon which the California Supreme Court subsequently heard petitioner's appeal. It is the circumstances under which this transcript was prepared and settled that give rise to the issue now confronting us.

*Chessman,* 354 U.S. at 158–59 (footnote omitted). Only approximately one third of the trial transcript actually existed; the remainder was untranscribed and, for purposes of California law, *unavailable* such that a reconstruction and settlement of the record was required. *See id.* at 158 n. 4. Contrary to the majority's suggestion, a record did not exist for two thirds of the trial. In fact, Chessman claimed that the deceased court reporter's notes "could not be transcribed with reasonable accuracy," and he submitted 200 corrections to the " 'rough' draft" of the *reconstructed* transcript prepared by a substitute court reporter. At an *ex parte* reconstruction hearing, the trial judge determined the accuracy of the substitute court reporter's transcription, allowed eighty of the defendant's corrections, and "settled the record upon which petitioner's automatic appeal was to be heard." *Id.* at 160. Thus, *Chessman* is directly on point in reviewing Defendant's due process claim. In fact, the reconstruction in *Chessman* was much more extensive than the present case because it involved nearly twelve hundred pages of a trial transcript, rather than a relatively short plea hearing. The issue of presence and the defendant's participation in the reconstruction process, then, was just as squarely presented by the facts of *Chessman* as in the present case.

{62} The majority states that Defendant was "deprived of any personal participation in the proceeding." Majority opinion, n. 3. While Defendant was not present at the reconstruction hearing, he had ample opportunity under Rule 12–211(H) to present a statement of proceedings. He chose not to do so. Moreover, this is not a distinguishing fact. from *Chessman* because the Court in that case viewed the defendant as having "no voice in determining" the settled record. *Chessman*, 354 U.S. at 164, 77 S.Ct. 1127. To the contrary, whereas the defendant in *Chessman* "never had his day in court upon the controversial issues of fact and law involved in the settlement of the record upon which his conviction was affirmed," *id.*, Defendant's interests were fully and adequately represented by his appellate counsel at the reconstruction hearing.

{63} Without citation to a specific page, the majority states that the Supreme Court "limit[ed] itself to the facts" in *Chessman*. Majority opinion, n. 3. Nowhere in *Chessman* does the Court limit itself to its facts. The Court determined that the defendant "was entitled to be represented throughout [the reconstruction] proceedings either in person or by counsel." *Chessman*, 354 U.S. at 162, 77 S.Ct. 1127. The "*ex parte* settlement of [the] state court record violated petitioner's constitutional right to procedural due process." *Id.* In reaching this conclusion, the Court relied on *Snyder*, which articulated the Court's current right to presence analysis. Thus, it is clear that the principles upon which *Chessman* was based are not limited to its facts. Like the present case, *Chessman* analyzed the requirements of the Due Process Clause at a hearing to settle a record due to an unavailable trial transcript for purposes of an automatic appeal in a death penalty case. Indeed, it seems unusual to have such on-point Supreme Court authority in relation to a federal constitutional challenge. I believe that the Supreme Court, if presented with the facts in this case, would apply *Chessman* and hold that Defendant's due process rights were not violated by his absence from the reconstruction hearing. Perhaps the majority's interpretation of *Chessman* will provide an impetus for the Supreme Court to clarify its position on this issue at some point in the future.

{64} Finally, regarding *Chessman*, the majority states that "the Supreme Court's holding that the *ex parte* settlement of the transcript violated Chessman's due process rights simply does not bar this Court from requiring Defendant's presence at the reconstruction hearing that [it] is ordering." Majority opinion, n. 3. The majority bases its holding on the Due Process Clause of the federal Constitution. *See* Majority opinion, ¶ 14. The United States Supreme Court is the ultimate authority in the interpretation of the United States Constitution. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) ("[O]f course, a State may not impose ... greater restrictions as a matter of federal law when this Court specifically refrains from imposing them."); *accord Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 1878, 149 L.Ed.2d 994 (2001); *cf. Arizona v. Evans*, 514 U.S. 1, 8–9, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) (describing the Supreme Court "as final arbiter of the United States Constitution" and stating that state courts "are *not* free from the final authority of this Court"). The Supreme Court has held that the Due Process Clause of the federal Constitution is satisfied in this circumstance by either the presence of counsel or the defendant. Defendant's appellate counsel attended the reconstruction hearing and represented Defendant's interests. It is not the prerogative of a state court to interpret the federal Constitution in a vacuum. This Court cannot reinterpret the federal constitution contrary to Supreme Court precedent. Thus, I believe that the majority cannot hold that Defendant, in addition to his counsel, must be present at a reconstruction hearing based on the federal Constitution.

{65} In a situation nearly identical to the present case, the Supreme Court of North Carolina, like the Supreme Court in *Chessman*, rejected a defendant's claim in a death penalty case that the defendant's absence from a reconstruction hearing violated his due process rights.

Under Rule 11(c) of the North Carolina Rules of Appellate Procedure, if the parties are unable to agree on the record on •

appeal, it becomes the duty of the trial judge to settle the record. In the instant case, the parties were unable to agree on the record on appeal, and the trial judge conducted a hearing in open court upon the record with defense counsel and the prosecutor present. Over defendant's objection, the court heard testimony from Deputy Clerk Helen Sewell regarding the method and manner by which the jurors in this case were sworn by her prior to defendant's case being called for trial. Defense counsel objected on the basis that defendant was not present. We find no error. *First, defendant's presence is not required at a hearing to settle the record on appeal.* Second, defendant has failed to show how he was prejudiced by not receiving advance notice, since his counsel was present and fully examined Ms. Sewell and could have, but did not during the course of the hearing, ask her to find and bring any necessary documents to the courtroom. Furthermore, defendant has not argued that he was prevented from presenting evidence at the hearing.

*State v. McNeill*, 349 N.C. 634, 509 S.E.2d 415, 425–26 (1998) (emphasis added); *accord Bertsch v. State*, 379 S.W.2d 657, 660 (Tex. Crim.App.1964) (stating in a case involving the death penalty that "[t]he mere correction of appellant's exhibit in his absence, after the motion for new trial had been overruled, was not 'evidence' being introduced from the witness stand" and therefore "[t]he proceeding was not such a part of appellant's trial as to require his presence"). These cases definitively establish that, because Defendant was represented at the reconstruction hearing by counsel, the district court adequately protected Defendant's right to due process.

{66} While dismissing *Chessman* in a footnote, the majority places great emphasis on questionable authority from New York's intermediate appellate court to support its position. The facts in *People v. Braithwaite*, 190 A.D.2d 572, 593 N.Y.S.2d 464 (App.Div. 1993) are clearly distinguishable from the present case as it did not involve the death penalty or the reconstruction of a trial transcript or a plea hearing. Nonetheless, I reject this case not due to its clear factual distinctions but because of its lack of analysis

or rationale and its inconsistency with binding authority. The opinion in *Braithwaite* consists of merely four sentences, contains no analysis, relies largely on a concession by the government, and provides no indication of whether, consistent with *Chessman*, the defendant's counsel was present at the proceeding. The opinion also does not indicate whether the defendant had an opportunity to submit a statement of evidence or proceedings as was provided to Defendant in the present case under Rule 12–211(H). Moreover, *Braithwaite's* own authority does not support its holding. The *Braithwaite* court's sole authority for its holding was *People v. Mullen*, 44 N.Y.2d 1, 403 N.Y.S.2d 470, 374 N.E.2d 369 (1978), which did not involve a record reconstruction, and *Braithwaite* relied specifically on the *Mullen* court's general description of the federal constitutional right to presence as interpreted by the Supreme Court in *Snyder*. *Braithwaite's* application of the federal constitutional right to presence directly conflicts with the binding authority of *Chessman* as well as binding New York precedent, *People v. Peters*, 6 A.D.2d 958, 176 N.Y.S.2d 448, 449 (App.Div.1958) ("Counsel should be assigned or the defendant produced in person at the hearing [to settle the record] as the trial court may determine in its discretion. *See Chessman v. Teets*, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253."). Under these circumstances, it is certainly questionable whether *Braithwaite* can be said to be good law in New York, much less adequate authority upon which to rest a remand for a new reconstruction hearing in our case.

{67} As additional authority supporting the proposition that Defendant's presence was required at the reconstruction hearing, the majority relies on *State v. Casimono*, 298 N.J.Super. 22, 688 A.2d 1093, 1095 (1997), and *Cole*, 478 A.2d at 287. Neither of these cases support the majority's action in this case. *Casimono* relied on the articulation from *State v. Izaguirre*, 272 N.J.Super. 51, 639 A.2d 343, 346 (1994) of "the duty of the trial court as a matter of due process entitlement of the parties to reconstruct the record in a manner that, considering the actual circumstances, provides reasonable assurances

of accuracy and completeness." The Court in *Casimono* recognized that in *Izaguirre* itself the judge and counsel for both parties participated in the reconstruction, without the presence of the accused. *See Casimono*, 688 A.2d at 1095. In fact, the Court held in *Izaguirre*:

> The procedure so thoughtfully crafted and implemented by [the judge] was manifestly designed to achieve [the] goal [of ensuring a reasonably accurate and complete record]. The extensive participation of [the prosecutor] and [defense counsel] was fully in keeping with their obligations as officers of the court as well as trial advocates. The reconstructed record before us, as the product of the three participants'[, the trial judge, the prosecutor, and defense counsel,] substantial effort and meticulous attention, bears every earmark of one that is as accurate and complete as circumstances permitted. In the absence of any argument that the reconstruction or any portion of it is not a reasonably accurate and complete portrayal of what occurred at trial, we conclude that the due process interests of the parties have been satisfied.

639 A.2d at 346. By contrast, in *Casimono*, "there was no input from either attorney" or from the defendant. *Casimono*, 688 A.2d at 1095. Thus, the procedure utilized in *Casimono* failed to comply with the due process requirements of *Chessman*. Additionally, the court in *Casimono* did "not read *Izaguirre* to require the precise procedure utilized by the trial judge in that case in every instance;" the court nonetheless determined that the reconstruction by the judge alone was insufficient to satisfy the basic requirements outlined in *Izaguirre*. *Casimono*, 688 A.2d at 1094. *Casimono* duly applied the requirements of *Izaguirre* and made no indication whatsoever that the court's enthusiastic approval in *Izaguirre* of a reconstruction process that was conducted in the defendant's absence was suspect. In this context, *Casimono's* reference to an opportunity for the defendant to attend must be construed as nothing more than a guideline made in dicta rather than a requirement that would require a new reconstruction hearing if not met.

{68} *Cole* is simply inapposite on this point. In that case, which involved a missing transcript for an entire trial, the trial court did not even conduct a reconstruction hearing. *Cole*, 478 A.2d at 279–80. Thus, *Cole* cannot stand as authority for a right of presence for a defendant at such a hearing. The reconstruction of the record was instead based on a statement of the evidence and proceedings which was prepared and filed by the defendant's appellate counsel and which, through no fault of the defendant, had to be prepared in the defendant's absence because she had already completed her probation prior to the discovery of the missing record and could not be located. *Id.* at 279, 285. In other words, the defendant in that case had absolutely no opportunity to assist in the process of reconstruction. Unlike *Cole*, and contrary to the majority's statement he "was deprived of any personal participation in the proceeding," Majority opinion, n. 3, Defendant had an opportunity to file a statement of evidence or proceedings pursuant to Rule 12–211(H). In addition, Defendant, through counsel, had an opportunity to present the testimony of witnesses, namely his trial counsel, at the reconstruction hearing, and also had the opportunity to cross-examine the prosecutors. Thus, the procedures utilized in the present case actually exceeded the *Cole* court's reference to a mere opportunity to supplement or contest the settled record and provides no support for the majority's position.

{69} From this review of *Braithwaite, Casimono,* and *Cole,* I believe that the majority's position that Defendant had a right to be present at the reconstruction hearing is unsupported and far from irrefutable, especially when this authority is considered in context with *Chessman* and *McNeill.* The absence of support for the majority's analysis, and the existence of binding authority from the Supreme Court and such authoritative on-point precedent to the contrary, makes it all the more troubling that the majority is willing to prolong this matter even further than it has been for a mere technical exercise that I believe will have no effect on the merits of the present appeal. Consistent with due process, Defendant has had numerous opportunities to present his version of the plea

hearing and, in excess of the procedural requirements outlined in Rule 12–211(H), has even had the opportunity, through counsel, to cross-examine the prosecutors' version of the plea hearing. There is nothing more that can be gained by requiring a new reconstruction hearing at which Defendant must be present. In short, Defendant's "presence would be useless, [and] the benefit but a shadow." *Snyder*, 291 U.S. at 106–07, 54 S.Ct. 330.

{70} Defendant's presence at the evidentiary hearing was not constitutionally compelled. Defendant had notice of the hearing. In addition, Defendant had an opportunity to be heard in that he had the obligation of filing a statement of evidence under Rule 12–211(H). Defendant chose not to relate his version of the plea hearing. The majority states that he "could very well have provided important information that would have aided his defense." Majority opinion, ¶ 14. I disagree. Defendant's right to confront the witnesses against him was not implicated by the reconstruction hearing because the prosecutors were merely attempting to recall the events at the plea hearing, not to prove Defendant's guilt. *See Quinones*, 608 N.E.2d at 731. Defendant's appellate counsel were present at the hearing and cross-examined the prosecutors concerning their memories of the hearing. As a result, Defendant's presence would not have contributed to the fairness of the proceeding. *Cf. Kentucky v. Stincer*, 482 U.S. 730, 745–46, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (concluding that right to be present was not implicated by a competency hearing for witnesses scheduled to testify at trial because all questions of the witnesses related to their ability to recollect rather than to substantive testimony against the defendant). Thus, "there is no indication that respondent 'could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending.'" *Id.* at 747, 107 S.Ct. 2658 (quoting *Gagnon*, 470 U.S. at 527, 105 S.Ct. 1482 (alterations in original)).

{71} The sole purpose of reconstructing a record is to permit meaningful appellate review. Defendant concedes that "[t]he purpose of keeping a record of proceedings is to give the appellate court a basis on which to evaluate events in the trial court." The purpose of record reconstruction under Rule 12–211(H) is not to adjudicate a defendant's guilt or to impose a sentence. Indeed, the need for a record reconstruction presupposes that a defendant has been adjudged guilty of the crime at issue and is appealing the conviction. As described by the Supreme Court, the settlement of a record is a "necessary and integral part" of an appeal. *Chessman*, 354 U.S. at 162–63, 77 S.Ct. 1127 (footnote omitted); *accord id.* at 158–59, 77 S.Ct. 1127 (discussing "the preparation and settlement of the trial transcript constituting the appellate record upon which the California Supreme Court subsequently heard petitioner's appeal"). However, the test for the right to be present is not whether the proceeding is important for appellate review. *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948) ("[A] prisoner has no absolute right to argue his [or her] own appeal or even to be present at the proceedings in an appellate court. The absence of that right is in sharp contrast to his [or her] constitutional prerogative of being present in person at each significant stage of a felony prosecution . . . ." (citation omitted)). The test, instead, is whether the defendant's presence has "a relation, reasonably substantial, to the fullness of his [or her] opportunity to defend against the charge." *Snyder*, 291 U.S. at 105–06, 54 S.Ct. 330. Once a defendant has been convicted and sentenced, there is no longer a charge against which he or she could defend. It is now a final judgment of conviction which is subject to review on appeal.

{72} The majority's holding in this case will significantly alter the process of record reconstruction. A typical record reconstruction under Rule 12–211(H) will take place without an evidentiary hearing. Rule 12–211(H) provides that, upon discovery of an unavailable record, the appellant must submit a statement of the evidence or proceedings. The appellee then files objections or amendments to the statement, and it is the trial judge's responsibility to settle the record from these documentary submissions. In this case, the State could have permissibly submitted its version of the plea hearing in

documentary form. Thus, due to the holding of an evidentiary hearing, Defendant in this case received more process than is required by Rule 12–211(H) because, with the assistance of his appellate counsel, he was able to cross-examine the prosecutors. As previously indicated, there is an almost identical rule governing the reconstruction of unavailable records in the Federal Rules of Appellate Procedure. Fed. R.App. P. 10(c). The availability of a documentary resolution to record reconstruction at both the federal and state level makes it unquestionable that there is no right to presence; obviously, Defendant cannot be present when a hearing is not held.

{73} The reconstruction hearing fully complied with the dictates of fundamental fairness without necessitating Defendant's presence. In sum, Defendant's presence is not required because his interests are adequately represented by counsel, he has a full and fair opportunity to present his version of events in the statement of evidence or through the testimony of his trial counsel, and the proceeding in no way affects his status in terms of his guilt or innocence or his sentence. "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–07, 54 S.Ct. 330. The reconstruction proceeding is a tool for appellate review, and, as precedent from the United States Supreme Court holds, Defendant's presence was not constitutionally required.

### 4. The Majority's New Rule Regarding the Judge Presiding Over the Reconstruction Hearing

{74} Without any authority or much discussion, the majority summarily "direct[s] that a judge other than the original trial judge preside over the new reconstruction hearing." Majority opinion, ¶ 16. Courts have uniformly held that the presiding trial judge must settle the record and can rely on his or her own recollection. *See, e.g., United States v. Kenney*, 911 F.2d 315, 318 (9th Cir.1990); *Quinones*, 608 N.E.2d at 730.

[I]f the trial court is not satisfied that the agreed upon statement is accurate or as complete as possible, the court should take appropriate measures to modify it. In accomplishing these tasks, the trial court may rely on its own recollection or notes from trial or may conduct hearings and consult with counsel and other sources.

*Cole*, 478 A.2d. at 284–85 (footnote and citations omitted). Obviously, the original trial judge is in the best position to do so. *See Williams*, 629 A.2d at 405 ("[T]he trial court is in the best position to determine whether the reconstructed record adequately reflects what occurred at the trial."); *see also State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs., Inc.*, 110 N.M. 331, 333, 795 P.2d 1023, 1025 (Ct.App.1990) ("If the transcript is inaccurate, counsel may object and the district court must resolve the objections. Thus, problems with the transcript can be caught and corrected (*by a judge familiar with the proceedings*) in a timely fashion . . . ." (emphasis added)). "When a district court settles a dispute about what occurred in proceedings before it, the court's determination is conclusive unless intentionally false or plainly unreasonable, this because [u]ltimately the [District] Court has direct knowledge of what the parties [stated in the] case and of what the Court's own general procedures are." *United States v. Hernandez*, 227 F.3d 686, 695 (6th Cir.2000) (citations, quotation marks, and quoted authority omitted) (alterations in original).

{75} Courts have also uniformly rejected the notion that a judge presiding over a reconstruction hearing is a witness in the case and, thus, have held that a trial judge need not recuse at a record reconstruction hearing. "In a hearing to reconstruct and settle the record of a trial court proceeding, as the final arbiter of the record the Trial Judge is not, in constitutional terms, a witness, but rather the official who certifies to the appellate court, if he or she can, what originally took place below." *People v. Alomar*, 93 N.Y.2d 239, 689 N.Y.S.2d 680, 711 N.E.2d 958, 963 (1999); *accord Quinones*, 608 N.E.2d at 731 ("There is no suggestion in this case of judicial bias that would cast doubt on the impartiality of the judge's findings and rulings. The judge is not acting as a witness against the defendant in a constitu-

tional sense." (footnote omitted)). Therefore, I respectfully believe that the majority's reliance on Rule 11–605 is misplaced.

{76} The purpose of a record reconstruction hearing is to produce an accurate and complete appellate record. I believe that requiring that the trial judge, the neutral authority who is in the best position to settle the record, be reduced to the status of a witness frustrates the very purpose of record reconstruction. Under Rule 12–211(H), the district court must settle the record because of its involvement in and knowledge of the original proceeding; there is no suggestion in the rule that the trial judge should be prevented from presiding over the proceeding. *See In re Jeff M.*, 1999–NMCA–045, ¶ 20 n. 2, 127 N.M. 87, 977 P.2d 352 (discussing a reconstruction pursuant to Rule 12–211(H)). The majority's directive that Judge Pope "may not" preside over the second reconstruction creates a fundamental change to Rule 12–211(H) by precluding the trial judge from settling and approving the record. The New Mexico Constitution prevents this Court from changing a rule of procedure in a pending case. Article IV, Section 34 of the Constitution of the State of New Mexico mandates that "[n]o act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." *See Marquez v. Wylie*, 78 N.M. 544, 545–46, 434 P.2d 69, 70–71 (1967) (stating that Article IV, Section 34 applies to rules of the Supreme Court). In addition to this constitutional limitation, I see no reason to require Judge Pope's recusal, absent an allegation of bias or falsification of the record. *See Alomar*, 689 N.Y.S.2d 680, 711 N.E.2d at 962 ("Recusal, as a matter of due process, is required only where there exists a direct, personal, substantial or pecuniary interest in reaching a particular conclusion or where a clash in judicial roles is seen to exist. Here, the Judges sought only to assure that their stenographic records were certified as accurate. No such interest on the part of these Judges is shown in these records." (citations omitted)); *see also Rogan v. Menino*, 175 F.3d 75, 80 (1st Cir.1999) ("If Rule 10(c) is to be more than a hollow promise, a court of appeals must accept a district court's reconstruction of what transpired at

an unrecorded conference or similar proceeding unless some basis exists for believing that the trial court's account is patently unreasonable or deliberately false."). The majority's analysis would seem to require that the trial judge recuse in every instance of a settlement of the record, even if the settlement is based solely on statements of evidence by both parties and in the absence of a hearing. Apparently, the trial judge's role in such a circumstance would be reduced to the mere filing of an affidavit. Under this interpretation of Rule 12–211(H), however, there is no reason to require that a district court judge settle the record; the appellate court would be equally suited to the blind task of settling the record from documentary submissions. In any event, as a matter of judicial economy, since the majority believes that the original trial judge should not preside over the reconstruction hearing, it is unfortunate that this Court remanded the matter to Judge Pope three years ago.

## B. Adequacy of the Record to Review Defendant's Claims

{77} In *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court held that a trial court cannot accept a guilty plea unless there is "an affirmative showing that it was intelligent and voluntary." The Court held that it is impermissible to presume a waiver of the privilege against self-incrimination, the right to a trial by jury, and the right of confrontation "from a silent record." *Id.* at 243, 89 S.Ct. 1709. Additionally, the defendant must understand the nature of the charges against him or her and the relationship of the law to the facts. *Id.* at 243 n. 5, 89 S.Ct. 1709 (relying on *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). In *State v. Garcia*, 1996–NMSC–013, 121 N.M. 544, 547–49, 915 P.2d 300, 303–05, this Court held that the affirmative showing requirement of *Boykin* must be determined based on the record of the taking of the plea rather than the record of other proceedings occurring either before or after the taking of the plea, such as a sentencing hearing or a hearing on a motion to withdraw the plea. "[T]he critical event is the taking of the plea.

Rule 5–303(E) clearly contemplates the court advise the defendant at that time and *prior to accepting the plea.*" *Id.* at 548, 915 P.2d at 304. The Court determines whether a plea is knowing and voluntary by assessing the totality of the circumstances. *See, e.g., Isom,* 85 F.3d at 835.

{78} Defendant contends that the State is unable to make an affirmative showing that his plea was knowing and voluntary in accordance with *Boykin* because of the missing transcript of the plea hearing. I disagree. First, Defendant improperly places the burden on the State to demonstrate the validity of the plea. As explained above, it is Defendant's burden to demonstrate a manifest injustice in order to warrant the withdrawal of his plea. Second, I believe that the record does affirmatively show that Defendant's plea was knowing and voluntary.

{79} Numerous courts have addressed the validity of guilty pleas in light of a missing or otherwise unavailable record. For example, in *Quinones,* 608 N.E.2d at 730–32, the Supreme Judicial Court of Massachusetts addressed a plea of guilty to second degree murder for which the defendant was sentenced to life imprisonment. At the defendant's plea hearing, a court reporter prepared a verbatim transcript; however, the transcript became unavailable when the court reporter's vehicle, which contained the transcript, was stolen. The trial judge conducted a reconstruction hearing following the defendant's motion to withdraw his plea at which defense counsel and the court stenographer testified. The judge found after the hearing that he was convinced beyond a reasonable doubt that the plea was voluntary and knowing. The Supreme Judicial Court concluded that "[i]f the record is unavailable, it may be reconstructed through testimony or other suitable proof of what happened in court when the guilty plea was taken." *Id.* at 730. The court further concluded that the reconstructed record adequately demonstrated that the defendant's plea was constitutionally valid. *Id.* at 732.

{80} The court's analysis in *Quinones* is supported by numerous decisions from other state and federal courts. *See, e.g., United States v. Buckles,* 843 F.2d 469, 471–73 (11th Cir.1988) (affirming a guilty plea despite the fact that the verbatim transcript of the plea hearing was lost or misplaced); *Kotas v. Commonwealth,* 565 S.W.2d 445, 446–47 (Ky. 1978) (affirming the denial of a motion to withdraw a plea based upon a record supplemented by a later evidentiary hearing). In *United States v. Kelly,* 167 F.3d 436, 437 (8th Cir.1999), the Eighth Circuit addressed a guilty plea for which the tape transcript was unavailable due to a fire at the court clerk's office. As with Defendant in the present case, the defendant argued that he was entitled to reversal because the participants at the hearing could not "recall verbatim what actually transpired" at the plea hearing. *Id.* at 438. The Eighth Circuit rejected the defendant's argument and affirmed the guilty plea based on a plea agreement and the representation of the trial judge and trial counsel that they remembered nothing untoward occurring at the hearing. *Id.* at 438 & n. 6.

{81} In *Joe v. State,* 565 P.2d 508, 510 (Alaska 1977), there was no recording of the plea proceeding "[d]ue to a malfunction in the courtroom electronic recording equipment." As a result, the trial court held a hearing to determine whether the plea was in accordance with Alaska's rules of criminal procedure. *Id.* The trial judge testified at the hearing, and even though he had been unable to recall the proceedings verbatim, the trial court concluded that the defendant was advised of his rights. *Id.* at 511. The Supreme Court of Alaska affirmed the trial court's decision to conduct an evidentiary hearing and adopted the government's position that

> if the mechanical failure of in-court recording equipment is ... to represent automatic grounds for withdrawal of a plea, the continuing validity of every conviction which rests upon a plea will hereafter depend upon grounds which are irrelevant to the propriety or the fairness of the proceedings which led to that plea. Instead, the validity of convictions would rest upon such factors as the whim of nature, the mechanical capability of the court system's recording devices, the human fallibility of in-court deputy clerks in operating record-

ing devices, or the clerical abilities of the trial court clerk's staff.... The absurdity of appellant's position ... is underscored by the fact that a major fire in the Anchorage courthouse could vitiate the majority of convictions which have occurred in the Third Judicial District under the rule appellant espouses.

*Id.* at 513 (omissions in original). The court also affirmed the lower court's determination that the testimony from the evidentiary hearing sufficiently supported the validity of the plea. *Id.* at 514.

{82} Similarly, in *State v. Hall,* 188 Neb. 130, 195 N.W.2d 201, 204 (1972), the Supreme Court of Nebraska affirmed a plea of guilty to first degree murder despite the disappearance of the record of the plea hearing. The court relied on a later evidentiary hearing at which the judge who presided over the plea testified that he did not recall verbatim what had been said at the hearing but that he followed a memorandum of questions · and remembered posing those questions to the defendant. *Id.* The court concluded that it would be

> wholly unrealistic to determine that the loss of the actual record of proceedings should require the vacation of a guilty plea even where the State has established by other evidence a reasonably accurate account of what took place. Such a record is not a 'silent record' even though it speaks with less authority than the verbatim record of the proceedings....

*Id.*

{83} This case does not involve a silent record. Under *Boykin,* there is no constitutional requirement of a verbatim transcript of a plea hearing. *E.g., United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 877 (7th Cir.1982); *State v. Ziemba,* 216 Neb. 612, 346 N.W.2d 208, 218 (1984). Moreover, the Supreme Court has specifically distinguished "an extant transcript [that] is suspiciously 'silent' on the question whether the defendant waived constitutional rights" under *Boykin* from a transcript that existed at one time and may have reflected a valid waiver but is no longer available. *Parke v. Raley,* 506 U.S. 20, 30, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *see Boykin,* 395 U.S. at 242, 89 S.Ct.

1709 (providing that guilty pleas are to be governed by "the same standard" as waiver of right to counsel and stating, with respect to the right to counsel, that a presumption of waiver from a silent record is impermissible and "[t]he record must show, *or there must be an allegation and evidence which show,* that an accused was offered counsel but intelligently and understandingly rejected the offer") (quoted authority and quotation marks omitted) (emphasis added). "The [constitutional] standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

{84} In the present case, there is ample evidence to comply with *Boykin's* requirement of an affirmative showing that Defendant's guilty plea was intelligent, knowing, and voluntary. First, the record contains the plea agreement, which is signed by Defendant, his attorneys, the prosecutor, and the judge. The plea agreement lists the charges to which Defendant pleaded guilty and the constitutional rights he waived by entering his plea. Second, the record contains the transcript of the reconstruction hearing and the trial court's findings and conclusions. The trial court found that Defendant was advised of his constitutional rights at the plea hearing, understood those rights, and knowingly and intelligently waived them. Because it is the trial court's duty under Rule 12–211(H) to settle the record, the trial court's factual findings as to what occurred at the plea hearing are reviewed only to determine whether they were intentionally falsified by the judge or are unsupported by substantial evidence. *See United States v. Garcia,* 997 F.2d 1273, 1278 (9th Cir.1993) ("When the district court under Rule 10(e) settles a dispute about what occurred in proceedings before it, the court's determination is conclusive absent a showing of intentional falsification or plain unreasonableness." (quoted authority and quotation marks omitted)); *United States v. Mori,* 444 F.2d 240, 246 (5th Cir.1971) ("The trial judge ordered the record corrected pursuant to his recollection of the events at issue, and that

determination, absent a showing of intentional falsification or plain unreasonableness, is conclusive."); *cf. State v. Kurley,* 114 N.M. 514, 518, 841 P.2d 562, 566 (Ct.App.1992) ("When the record provided by defendant is incomplete, this court will presume that the absent portions of the record support the trial court's actions.").

{85} The trial court's findings are clearly supported by the testimony of the prosecutors in this case, both of whom testified that they specifically remembered the plea hearing in this case due to the gravity of the charges. The prosecutors testified that there was no question that Defendant understood the charges, that the facts that would have been proven at trial were read aloud, and that the trial judge engaged in a personal colloquy with Defendant, advising him of his rights and ensuring that he understood the rights he was waiving. Both prosecutors noted that neither of Defendant's attorneys who were present at the plea hearing objected at any stage of the hearing. The trial judge also noted that he specifically remembered going over his standard form of questions with Defendant. This standard form of questions was made a part of the record and provides further evidence that Defendant's plea was knowing and voluntary. *See Quinones,* 608 N.E.2d at 730 ("We see no impropriety . . . in relying on a judge's customary practice in taking guilty pleas to reconstruct the record."). Defendant did not introduce a statement of the evidence and called no witnesses to dispute the prosecutors' version of the plea hearing. I conclude that the trial court's findings from the reconstruction hearing are clearly supported by substantial evidence.

{86} Defendant also appears to raise, related to the missing transcript, the argument that the trial court failed to comply with Rule 5–303(G), which requires the district court to make a "verbatim record of the proceedings" when initially taking a plea that "shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea." Defendant relies on *Garcia,* 121 N.M. at 546–49, 915 P.2d at 302–05, in

which this Court addressed a trial court's failure to comply with Rule 5–303 in accepting a guilty plea. Nevertheless, as this Court made clear in *Garcia,* a guilty plea will not be reversed for a failure to comply strictly with the script of the rule unless that failure causes "prejudice to the defendant's right to understand his guilty plea and its consequences." *Garcia,* 121 N.M. at 547, 915 P.2d at 303.

{87} In this case, as is clear from the reconstruction hearing, the trial court complied with Rule 5–303 by advising Defendant of the nature of the charges, the facts which the State intended to prove, and the constitutional rights which Defendant was waiving. Additionally, the trial court complied with Rule 5–303(G) during the original plea hearing by making a verbatim transcript of that hearing. The fact that the transcript was *later* lost or misplaced did not affect Defendant's ability to understand his guilty plea and its consequences at the time he pleaded guilty, and as discussed above, does not prevent this Court from ascertaining that Defendant's guilty plea met all constitutional requirements. Moreover, Defendant does not allege that the trial court failed to comply with Rule 5–303 in any specific way, such as by failing to advise him of certain requisite constitutional rights. *Cf. Buckles,* 843 F.2d at 473 ("In the case at bar, [the defendant] never alleged nor presented any evidence that the district judge did not comply in full with Rule 11 . . . . Mere conclusory allegations do not warrant the withdrawal of a guilty plea."). In *Allen,* 2000–NMSC–002, ¶ 113, 128 N.M. 482, 994 P.2d 728, the defendant argued that this Court could not perform a meaningful review because some bench conferences were inaudible on the tapes; we rejected this argument because "the trial court was careful to ensure that its rulings were stated on the record in an audible manner" and because the defendant failed to provide specific references that may have prejudiced his appeal. Thus, because "substantial compliance with [the rule] is sufficient," *Garcia,* 121 N.M. at 547, 915 P.2d at 303, Defendant is not entitled to relief as a result of the lost record. *Cf. State v. Jonathan B.,* 1998–NMSC–003, ¶¶ 6–13, 124 N.M. 620, 954 P.2d 52 (affirming a guilty plea

despite the trial court's failure to utilize a proper form for the plea agreement and despite the absence of the defendant's signature on the plea agreement).

{88} I conclude that there is an adequate record to review the plea. Based on the authority reviewed above and the evidence in the record, including the plea agreement and the reconstruction hearing, I conclude that Defendant's guilty plea was intelligent, knowing, and voluntary. It is noteworthy that Defendant simply argues that the State can no longer prove that he voluntarily entered into the plea; he does not directly contend that he entered his plea involuntarily or unknowingly. Defendant has failed to establish a miscarriage of justice or manifest injustice necessary to warrant withdrawal of the plea. I would therefore affirm Defendant's convictions.

### III.   Defendant's Sentence

### A.   Defendant's Waiver of the Right to a Sentencing Jury

{89} Defendant contends that his waiver of a jury at sentencing was not intelligent and voluntary because the trial court failed to advise him that a jury verdict on the death penalty must be unanimous. Defendant claims that his waiver is therefore in violation of "the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article II Section 18 of the Constitution of New Mexico." Defendant provides this Court with no authority and little argument on this issue. Defendant, on appeal, does not assert that our New Mexico Constitution's provisions addressing the right to a jury during trial provide greater protection than the federal counterpart. The majority agrees with Defendant's unanimity argument but relies on a different constitutional provision than Defendant, as well as on authority from other jurisdictions. Majority opinion, ¶ 18. I respectfully disagree. I believe the majority's holding on this issue is advisory and premature. Even if the majority's holding were appropriate at this juncture, I believe that it is founded upon an erroneous legal analysis. I believe that Defendant has no constitutional right to advice on the requirement of unanimity under either the federal Constitution or the New Mexico Constitution and that it was permissible for the judge to preside over the sentencing proceeding based on Defendant's failure to demand a jury at sentencing and express waiver of a sentencing jury.

### 1.   Advisory Opinions and Judicial Economy

{90} I believe it is premature for the majority even to address the issue of unanimity or any other sentencing issue in its present opinion. The majority is remanding this case back to the trial court in order to reconstruct the plea hearing, a second time, in Defendant's presence. Section 31-20A-4(A) requires this Court to automatically review a capital defendant's conviction and sentence. Thus, following Defendant's new reconstruction hearing, we must, in accordance with the majority opinion, automatically review Defendant's conviction. Until this Court affirms Defendant's conviction, it is unnecessary to address any issues regarding the death sentence. See State v. Cheshire, 170 W.Va. 217, 292 S.E.2d 628, 633 (1982) ("If it is determined on remand that the appellant was not competent to enter her guilty pleas, this issue will be moot, for if the appellant's convictions are invalid, all questions arising from sentencing pursuant to those convictions become meaningless. Consideration of the appellant's second assignment of error would thus be premature at this time."). The majority as much as concedes this point when it qualifies its unanimity holding with the language, "assuming Defendant's judgment of conviction stands." Majority opinion, ¶ 1. Because of the advisory nature of the unanimity issue, I believe that the majority's discussion of the issue is, at best, interlocutory and not binding on this Court when it considers Defendant's appeal following the second reconstruction hearing. The majority states that it is addressing the sentencing claim "in the interest of judicial economy, and in order to avoid the necessity of another appeal." Majority opinion, ¶ 17. However, as discussed above, this conclusion indicates a misunderstanding of the purpose of the remand for another reconstruction hearing. This Court will face this case again following

the second reconstruction hearing, and when it does so, it will be the continuation of the present appeal and not a second appeal. Moreover, on the rationale of "judicial economy," it seems to me that the majority would address all of Defendant's sentencing arguments in its present opinion. For example, if the majority accepted Defendant's argument that the death penalty is disproportionate in this case, then he would not be eligible for this sentence, and the Court would not have to remand for resentencing.

## 2. The Absence of a Federal Constitutional Right to a Sentencing Jury

{91} Unlike the right to a jury trial on the issue of guilt or innocence, the United States Supreme Court has directly and explicitly held that there is no constitutional right to a jury at sentencing in capital cases. *Spaziano v. Florida*, 468 U.S. 447, 464, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984).

> In light of the facts that the Sixth Amendment does not require jury sentencing, that the demands of fairness and reliability in capital cases do not require it, and that neither the nature of, nor the purpose behind, the death penalty requires jury sentencing, we cannot conclude that placing responsibility on the trial judge to impose the sentence in a capital case is unconstitutional.

*Id.* at 464.[10] As a result, it is clear that there is no federal constitutional requirement that a defendant who wishes to waive the statutory right to a sentencing jury be advised of the requirement of jury unanimity.[11]

{92} Presumably because there is clearly no federal constitutional right to a jury at sentencing, the majority instead relies on the New Mexico Constitution. There are two problems with the majority's reliance on Article II, Section 12. First, an argument based on Article II, Section 12 was neither preserved by Defendant in the trial court nor raised by Defendant on appeal, and our precedent dictates that this Court will not consider a state constitutional argument under these circumstances. Second, I believe that it is without question that Article II, Section 12 does not contain a right to a jury at sentencing.

## 3. The Majority's Violation of *Gomez*

{93} The majority's sole reliance on our Constitution for the present case is in contravention of our precedent. In *State v. Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1, this Court held that in order to preserve the issue of whether the New Mexico Constitution provides broader protection of a right than the federal Constitution under our interstitial approach to state constitutional law, a party must first assert the more expansive interpretation of the state constitutional provision and "provide reasons for interpreting the state provision differently from the federal provision" in the trial court. As the majority concludes, Defendant did not preserve any unanimity argument in the district court, much less assert that our Constitution should be interpreted more broadly than the Sixth Amendment or the Fourteenth Amendment. Further, even on appeal, Defendant himself *does not cite* Article II, Section 12 of the New Mexico Constitution. *See State v. Coffin*, 1999–NMSC–038, n. 2, 128 N.M. 192, 991 P.2d 477 (concluding

10. Several states continue the practice of having a judge, not a jury, impose a death sentence. Ariz.Rev.Stat. § 13–703.02 (Supp.2001); Idaho Code § 19–2515 (Supp.2001); Mont.Code Ann. § 46–18–301 (2001). Some states even allow a judge to override a sentence of life, recommended by a jury, with a sentence of death. *E.g.*, Ala.Code § 13A–5–46 to –47 (1994) (designating the jury's sentence as advisory).

11. There is, by comparison, a constitutional right to a jury trial on the issue of guilt or innocence in all cases except petty misdemeanors, *see Lewis v. United States*, 518 U.S. 322, 325–26, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996), and a defendant's waiver of this right is valid only if it is knowing and voluntary, the government consents to it, and the trial court sanctions it. *Patton v. United States*, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 91–92, 102–03, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *accord State v. Shroyer*, 49 N.M. 196, 203, 160 P.2d 444, 447 (1945); Rule 5–605(A) NMRA 2002. However, even in this context, there is no constitutional requirement that a trial court describe jury unanimity to a defendant in order to ensure a knowing waiver of the right to a jury trial. *See generally United States ex rel. Wandick v. Chrans*, 869 F.2d 1084, 1088 (7th Cir.1989); *State v. Bell*, 351 Md. 709, 720 A.2d 311, 321 (Md.1998).

that because the defendant, although at least citing the provision of the New Mexico Constitution at issue, did not assert that it should be more broadly interpreted than the federal constitution, the claim would be addressed only under the federal counterpart). In fact, Defendant does not rely on the constitutional right to a trial by jury at all, whether under the Sixth Amendment or under Article II, Section 12. Defendant simply contends, with no authority and almost no argument, that his waiver of a jury was not voluntary, knowing and intelligent because no witness testified that the district court mentioned unanimity to him; he claims that his waiver is therefore invalid under the Due Process Clauses of the United States Constitution and the protection of due process in Article II, Section 18 of the New Mexico Constitution. Thus, Defendant makes only a due process claim, and even with respect to this claim, Defendant did not argue to the district court and does not argue on appeal that this Court should interpret Article II, Section 18 of the New Mexico Constitution more broadly than the Fourteenth Amendment. Because Defendant does not argue that our Constitution should be interpreted more broadly than the federal Constitution, I believe it is improper and contrary to this Court's precedent to engage in a state constitutional analysis.

### 4. The Right to a Jury Under Article II, Section 12

{94} Relying on Article II, Section 12 of the New Mexico Constitution, the majority concludes that "[b]ecause the constitutional right to a jury predated the modern-day bifurcation of death penalty cases into guilt and sentencing phases, that right necessarily applies to both." Majority opinion, ¶ 18. Even if Defendant had properly raised a state constitutional claim, Article II, Section 12 simply does not protect the right to a jury at sentencing. This provision states, in relevant part: "The right of trial by jury *as it has heretofore existed* shall be secured to all and remain inviolate." N.M. Const. art. II, § 12 (emphasis added). The majority has no authority for the proposition that the right to a jury applies to the sentencing phase. The text of this provision limits its application to

a trial and does not specify any right to a jury at sentencing. Moreover, the right is expressly qualified by the manner in which it was defined at time of the adoption of the Constitution. It is plain that the drafters did not intend this provision to provide a right to a jury at a capital sentencing hearing because, at the time it was adopted, a death sentence was the mandatory statutory punishment for first degree murder. 1907 N.M. Laws, ch. 36, § 3. Neither the jury nor the judge had discretion to sentence a defendant convicted of first degree murder to life imprisonment. *See Territory v. Griego*, 8 N.M. 133, 42 P. 81 (1895). Because there was no right to have a jury determine the question of capital punishment at the time the Constitution was adopted, Article II, Section 12 *cannot* include the right to a sentencing jury.

> Clearly, [Article II, Section 12] continues the right to jury trial in that class of cases in which it existed either at common law *or by statute* at the time of the adoption of the Constitution, and in that class of cases where the right to a trial by jury existed prior to the Constitution, it cannot be denied by the legislature. And, as we view the matter, the phrase 'as it has heretofore existed' refers to the right to jury trial as it existed in the Territory of New Mexico at the time immediately preceding the adoption of the Constitution.

*State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 161, 315 P.2d 223, 226 (1957) (citations omitted). The absence of a right to a jury at sentencing either at common law or by statute at the time of the adoption of the Constitution forecloses the interpretation of Article II, Section 12 advanced by the majority. The involvement of a jury in determining capital sentencing is purely and exclusively statutory and did not exist in New Mexico until 1939, *see* 1939 N.M. Laws, ch. 49, § 1.

### 5. Defendant's Statutory Right to a Sentencing Jury

{95} Defendant does not have a constitutional right to a jury for his capital sentencing hearing under either the state or federal constitutions, much less a constitutional right to judicial advice on jury unanimity. Because there is no constitutional right to a

jury at sentencing, I can only construe Defendant's due process waiver argument as one based on a violation of the Capital Felony Sentencing Act. I therefore address whether the Legislature intended to require advice on jury unanimity in order to obtain a knowing and voluntary waiver of the statutory right to a jury at sentencing. While the majority states that the Capital Felony Sentencing Act "confirms" Defendant's "right to be sentenced by a jury," *see* Majority opinion, ¶ 19, the Act in fact *creates* the right to be sentenced by a jury. In other words, the "right to be sentenced by a jury" is statutory, not constitutional, and its limits are determined as a matter of statutory construction.

{96} I agree with the majority that, pursuant to statute, the sentencing jury must unanimously specify the death sentence. *See* Majority opinion, ¶ 18. However, this does not conclusively lead to a holding that a judge must inform defendants of a unanimity requirement. The Legislature has clearly required that in order for a defendant who pleads guilty to receive his or her statutory right to a jury at sentencing he or she must demand it. Pursuant to Section 31–20A 1(B) (1979), "[i]n the case of a plea of guilty to a capital felony, the sentencing proceeding shall be conducted as soon as practicable by the original trial judge or by a jury *upon demand of a party*." (Emphasis added.) The Legislature also used this language in Section 31–20A 1(D): "upon a plea of guilty, where no jury has been demanded, the judge shall allow argument and determine the punishment to be imposed." Again, Section 31–20A–3 directs, "in cases involving a plea of guilty, *where no jury has been demanded*, the judge shall determine and impose the sentence." (Emphasis added). The Legislature has clearly indicated, with this plain and unambiguous language, that if Defendant wished to be sentenced by a jury, he had the burden to demand it. Instead, Defendant did not demand a jury and, in fact, expressly waived a sentencing jury. Defendant chose to be sentenced by a judge. If Defendant bears the burden of demanding jury sentencing under the statute, then there is no support in the Capital Felony Sentencing Act for the majority's notion that the judge inform him of a unanimity requirement in order to

obtain a knowing waiver. There is a significant distinction between a right only upon demand and a right that otherwise exists until it is waived knowingly and voluntarily. *See, e.g., State v. Marrujo*, 79 N.M. 363, 365, 443 P.2d 856, 858 (1968); *State v. Lafler*, 224 Neb. 613, 399 N.W.2d 808, 812 (1987) ("A demand is required to invoke this statutory right."). As a matter of statutory construction, this Court must presume that the Legislature is aware of this distinction based on existing precedent. Thus, I believe that it is clear that the Legislature's repeated use of the word "demand" was deliberate.

{97} The majority relies on authority from other jurisdictions for its unanimity holding. The high courts of both Maryland and Pennsylvania have held that, in order for a waiver of the right to a sentencing jury to be knowing and voluntary, the trial court must advise the defendant that a jury verdict imposing the penalty of death must be unanimous. *Harris v. State*, 295 Md. 329, 455 A.2d 979, 984 (1983); *Commonwealth v. O'Donnell*, 559 Pa. 320, 740 A.2d 198, 212–13 (1999). However, the statutes in these states explicitly require that a defendant *waive* his or her statutory right to a sentencing jury, as compared to our statutory mandate that a capital defendant who pleads guilty *demand* his or her right to a sentencing jury. *See O'Donnell*, 740 A.2d at 211 (stating that statutory language, "if the defendant has waived a jury trial or pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled for that purpose unless waived by the defendant with the consent of the Commonwealth," requires that the defendant must waive his or her right (quoted authority omitted)). Thus, these states concluded that because the defendants have a statutory right under state law which must be waived, the defendants' waiver, to be knowing and voluntary, must comport with due process. *O'Donnell*, 740 A.2d at 212. Because a defendant in New Mexico who pleads guilty to a capital offense must demand a jury, these states' discussion of waiver requirements is inapposite.

{98} Even some states which have a waiver provision do not require the trial court to advise the defendant of unanimity. In *Peo-*

*ple v. King*, 109 Ill.2d 514, 94 Ill.Dec. 702, 488 N.E.2d 949, 964 (1986), the defendant argued that his signed waiver of a jury for the sentencing hearing was not knowing and intelligent, because he was not advised in open court of the requirement that a jury's decision imposing the death penalty be unanimous. The Illinois Supreme Court reiterated that it "previously has declined to adopt a rule that would require an admonition regarding the unanimity requirement," and concluded that the defendant's waiver was knowing and intelligent.[12] *Id.*

### 6. The Majority's New Requirement

{99} Although the majority states that the trial court erred by failing to inform him of unanimity, the majority does not specify if the judge must inform the Defendant of this "right" or if Defendant's counsel may satisfy this requirement. The majority merely concludes that "waiver of the right to be sentenced by a jury cannot be considered knowing and intelligent unless the defendant is aware of this critical aspect." Majority opinion, ¶ 20. The record in this case indicates that Defendant did not demand his right to a sentencing jury as required by the Capital Felony Sentencing Act. The record does not reflect that the district court advised Defendant of the requirement of jury unanimity. However, the record also does not indicate whether or not Defendant was aware of this requirement from an alternative source. In fact, even within his briefs to this Court, Defendant never states that he did not understand the unanimity requirement. He does not contend that his attorneys did not discuss the advantages of a judge over a jury for sentencing. The majority appears to presume that Defendant did not have this information. However, as I expressed above, I believe the majority's ruling on this issue is premature, and the ruling might change if different information is presented to this Court after remand. For this reason, I believe it would be prudent to ask either Defendant, if he takes the stand, or his trial counsel at the new reconstruction hearing if the issue of jury unanimity versus sentencing by

a judge was discussed in order to resolve the majority's concerns. *Cf. Garcia*, 121 N.M. at 549, 915 P.2d at 305 ("[P]rovided the record shows the defendant had the requisite information, the court need not be the only source of that information."). To reverse a death sentence by holding that a trial court did not properly inform a defendant of jury unanimity when the defendant otherwise knows of the requirement

> allows a defendant to sit idly by as the court conducts a possibly deficient colloquy concerning a waiver of a jury trial and then claim error once an unfavorable verdict and sentence is imposed. The crux of the issue in question is whether appellant knew and understood [his or] her rights so that a valid waiver of those rights could occur, not whether the court informed [him or] her of those rights. Whether a trial court informs a defendant of [his or ] her rights on the record is simply one factor for consideration, not a litmus test.

*O'Donnell*, 740 A.2d at 214 (Castille, J., dissenting).

{100} The Majority indicates that "[f]undamental error will not be invoked when it appears that the defendant contrived a procedural default in order to benefit from its protections." Majority opinion, ¶ 11. However, that is precisely what the majority must be allowing Defendant to do on this issue. Defendant does not contend that he did not understand the difference between one and twelve; it is possible, if not extremely likely, that he and his attorneys said nothing in the hopes of a more favorable verdict and are now simply asking the Court to conclude that a procedural defect, the trial court not informing Defendant of something of which he is already aware, invalidates the sentence. Thus, even assuming a right to advice on unanimity exists, the question in the present case is whether Defendant actually knew of the difference between sentencing by a jury and sentencing by a judge, not whether Judge Pearl himself informed Defendant of this notion. *Garcia*, 19 N.M. at 421, 143 P. at 1015 (stating, with respect to fundamental

---

12. It is noteworthy that none of these states have held that there is a constitutional right to a jury at sentencing. *See, e.g., People v. Erickson,* 117 Ill.2d 271, 111 Ill.Dec. 924, 513 N.E.2d 367, 374 (1987); *Bruce v. State,* 328 Md. 594, 616 A.2d 392, 396 (1992).

error review, that this Court "exercise[s] this discretion very guardedly, and only where some fundamental right has been invaded, and never in aid of strictly legal, technical, or unsubstantial claims."). As previously discussed, I believe the majority's holding on this issue is dicta. It is an interlocutory ruling, and thus, like this Court's 1999 panel decision on Defendant's motion regarding his absence from the first reconstruction hearing, it is subject to amendment or alteration. When this case returns after remand, this Court may thus address this issue with the benefit of knowing whether Defendant had actual knowledge regarding jury unanimity.

### 7. Interference with Counsel's Advice

{101} The majority also offers no guidance or direction to the trial court as to what the advice on unanimity must encompass. The majority merely states, "As a matter of pure probability, the requirement of jury unanimity means that while a defendant who is sentenced by a judge has only one chance of avoiding the death penalty, a defendant who is sentenced by a jury has twelve." Majority opinion, ¶ 19. The majority's reliance on *Lopez v. United States*, 615 A.2d 1140, 1147 (D.C.1992) for this proposition is interesting for a number of reasons.[13] The most interesting aspect of *Lopez* in relation to the majority opinion is the remedy chosen by the court. The court concluded that the trial court's inquiry into the knowing and voluntary nature of the waiver of the right to a trial by jury was deficient. *Id.* at 1147. However, similarly to Defendant in the present case, the defendant argued "that the trial judge's inquiry was insufficient, but she never specifically asserted either that she did not understand her rights or that she wanted a jury trial." *Id.* The court noted that this

constituted a *"persuasive reason[ ] not to set the conviction aside without further trial proceedings."* *Id.* If the defendant actually understood the difference between a jury trial and a bench trial, notwithstanding the judge's insufficient advice on the matter, then "no useful purpose would be served by setting aside her conviction on the basis of shortcomings in the proceedings which did not affect her choice. Indeed, to order a new trial upon such a state of facts would waste scarce judicial resources and would be contrary to the public interest." *Id.* at 1147–48. Thus, the court in *Lopez* was unwilling to presume, as the majority does in this case, that the defendant did not know the difference between a jury trial and a bench trial without such an assertion having been made by the defendant. As mentioned previously, Defendant was represented by multiple attorneys experienced in death penalty cases. Defendant does not contend to this Court that he did not know of the requirement of unanimity for jury sentencing in capital cases. I find it very difficult to believe that Defendant's experienced attorneys would have advised Defendant to elect to have a judge impose the sentence without first informing him that a sentencing jury could not impose a sentence of death except by unanimous verdict.

{102} I believe that a unanimity advice requirement that includes any mention of probabilities would infringe upon the attorney-client privilege. A defendant's counsel might advise his or her client that a judge is preferable to a jury for sentencing as a matter of trial strategy based on the nature of the facts in the case or because of unusually complex legal issues involved in the case, but under the majority's analysis, the court ap-

---

**13.** For example, the defendant in *Lopez* was convicted of assaulting her supervisor, and the case thus did not involve a sentencing jury. It concerned only advice on unanimity for purposes of waiving the constitutional right to a *trial* by jury. In addition, the court's requirement of unanimity advice in *Lopez* was not based on constitutional requirements. Instead, the court determined that the defendant may not have understood the difference between a jury trial and a bench trial based on the specific facts in the case, including the defendant being from a foreign country without a jury system, not having any prior contact

with the criminal justice system, and not speaking English. *Id.* at 1147 & n. 10. The court also recognized the significance of a jury demand and distinguished an earlier case in which it upheld the waiver of a jury trial even though the trial court neither advised the defendant about the requirement of unanimity nor complied with a procedural rule requiring a written waiver. *Id.* at 1145. The court in *Lopez* noted that in its earlier case the defendant had failed to demand a jury and that "the requirements for a waiver should be less exacting" when there has been no jury demand. *Id.* at 1145–46 & n. 9.

parently would be required to contradict that advice by simplistically, if not erroneously, informing the defendant that a jury always provides a better statistical chance for a life sentence. For example, in *Braun v. Ward,* 190 F.3d 1181, 1189 (10th Cir.1999), *cert. denied,* 529 U.S. 1114, 120 S.Ct. 1974, 146 L.Ed.2d 803 (2000), the defendant's attorneys "counseled him to plead nolo contendere and to go before the judge for sentencing rather than face a jury for both trial and sentencing because a jury would give him death 'for sure.'" Contrary to the majority's "pure probability" assessment, the experienced attorneys in *Braun* advised the defendant that "he had a 'fifty-fifty shot' in front of the judge of receiving a sentence of death, whereas he had only 'about a ten percent shot' in front of a jury." *Id.* at 1190. The Tenth Circuit rejected the defendant's claim that his plea was involuntary, due to improper influence of counsel in assuring a sentence less than death, because the attorneys "made no guarantee regarding [the] sentence" and, "[b]ased on [the attorneys'] experience and expertise, they properly advised [the defendant] that he had a better shot in front of the judge." *Id.* at 1190. By requiring the court to emphasize bare statistical probability over the particular facts in a case, the majority may unwittingly undermine the relationship between client and counsel and, effectively, instruct the defendant to ignore the sound advice of his or her experienced attorneys.

{103} For these reasons, I disagree with the majority's ruling regarding Defendant's sentence. If this case is ultimately remanded for a new sentencing hearing, I would remind the trial court that "[i]n cases of remand for a new sentencing proceeding, all exhibits and a transcript of all testimony and other evidence admitted in the prior trial and sentencing proceeding shall be admissible in the new sentencing proceeding. . . ." Section 31–20A–4(E).

## IV. Conclusions

{104} The existing record, including the transcript of the 1999 reconstruction hearing, provides a sufficient basis for this Court to fairly review Defendant's guilty plea. I conclude that Defendant's plea was knowing and voluntary. Defendant failed to demonstrate a miscarriage of justice, and I would thus affirm Defendant's convictions.

{105} Because the majority remands for a new reconstruction hearing, I urge the district court to make every effort to comply with the time requirements in Rule 12–211(H) in order to effectuate review of Defendant's conviction. I would urge the State to question Defendant, if he takes the stand, as well as his trial attorneys, as to the content and scope of their advice and his knowledge regarding jury unanimity, in addition to testimony regarding the trial judge's advice at the plea hearing of the rights Defendant waived and Defendant's awareness of the nature of the charges, the relationship of the law to the facts, and the maximum possible penalty under the plea agreement.[14] I would also note that any potential unavailability of witnesses at the prior reconstruction hearing should not impede the reconstruction process. *See* Rule 11–804(B)(1) NMRA 2002.

{106} I believe that Defendant's convictions and sentence should be affirmed consistent with our rules, statutes, cases, and constitutions. The majority holding otherwise, I respectfully dissent.

I CONCUR: JOSEPH F. BACA, Justice.

---

14. *People v. Sickich,* 935 P.2d 70, 73 (Colo.Ct. App.1996) ("[B]ecause defendant put in issue what advice he did or did not receive from counsel, as well as his own understanding of the proceedings, he waived the attorney-client privilege with respect to his discussions with counsel on these topics.").